UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re

    Archdiocese of Milwaukee,               Bankruptcy Case No. 11-20059-SVK

        Debtor.

    Archdiocese of Milwaukee Catholic
    Cemetery Perpetual Care Trust, on behalf of
    itself and its beneficiaries
                                  Adv. Proc. No. 11-_____-SVK

        Plaintiff,

    v.

    Official Committee of Unsecured Creditors,

        Defendant.

## COMPLAINT

Now comes the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (the "Trust"), on behalf of itself and the beneficiaries of the Trust, by its attorneys, Godfrey & Kahn, S.C., and seeks as follows:

## PARTIES

### The Trust

1.     Since 1857, the Archdiocese of Milwaukee (the "Debtor") has owned various Catholic cemeteries in Southeastern Wisconsin.

2.     A portion of the money which individuals pay to the Debtor to utilize such cemeteries as burial grounds has been held in trust for the perpetual care of such cemeteries.

Drafted by:
William E. Duffin
Timothy F. Nixon
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202-3590
Phone: 414-273-3500
Fax: 414-273-5198

3.     On April 2, 2007, the Trust was formally established under the statutes of the State of Wisconsin in order to more publicly recognize the status of the funds held in trust for the posterity of those interred in the Debtor's cemeteries.

4.     In addition to its status under the civil law of the State of Wisconsin, the Trust constitutes a juridic person under the Codex Iuris Canonici ("Canon Law"). As such, the Trust acts in conjunction with the vision of the Catholic Church; however, it functions as an autonomous body with independent decision-making authority, separate and distinct from that of the Church. See 1983 Code C. 113-123.

5.     The Trust functions as a corporal work of mercy to maintain and preserve cemetery property and, as such, holds funds for the perpetual care of cemetery property.

6.     The Trust has a fiduciary and religious responsibility to adequately provide for the future care of cemetery property.

**The Committee**

7.     The Defendant is the Official Committee of Unsecured Creditors, which was appointed to the above-referenced bankruptcy proceeding on January 24, 2011, pursuant to 11 U.S.C. § 1102(a)(1).

**JURISDICTION**

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, 11 U.S.C. § 105 and Fed. R. Bankr. Pro. 7001(2) & (9).

9.     Venue is proper under 28 U.S.C. § 1409, as this matter relates to the above-referenced bankruptcy proceeding, which is pending in this district.

10.     This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

# BACKGROUND

## Basis for the Trust

11.    The Debtor is a Wisconsin nonstock corporation subject to treatment as a public juridic person under the Canon Law.

12.    The Debtor was established on November 28, 1843, and was created an archbishopric on February 12, 1875.

13.    The Debtor's mission is to serve Catholic parishes, schools and institutions so that they may effectively carry out their mission, to serve the people of God in Southeastern Wisconsin and to serve the broader community.

14.    In furtherance of its mission, the Debtor has owned various Catholic cemeteries and mausoleums (collectively, the "Milwaukee Catholic Cemeteries") since its inception. Currently, the Debtor owns the following cemeteries and/or mausoleums: All Saints, Calvary, Holy Cross, Holy Trinity, Mount Olivet, Resurrection, Saint Adalbert, and Saint Joseph.

15.    The Debtor's ownership of the Milwaukee Catholic Cemeteries includes all burial facilities within the geographic boundaries of the Debtor including, without limitation, individual burial plots, crypts, niches and property dedicated for future use as burial facilities (collectively, the "Cemetery Property").

16.    The Cemetery Property currently consists of 1,000 acres of land, in which over 500,000 remains are interred.  An estimated 3,000 new burials take place each year.

17.    Parties wishing to utilize the Cemetery Property deliver payments to the Debtor (the "Cemetery Payment").

18.    A portion of each Cemetery Payment (currently 50% of each Cemetery Payment related to burial plots and $100 of each Cemetery Payment related to crypts) is paid in exchange

for perpetual caretaking services of the Cemetery Property, including preservation and maintenance of the Cemetery Property; this portion is held in trust for the perpetual care of the Milwaukee Catholic Cemeteries.

19. In 2008, funds then held in trust for the benefit of the perpetual care of the Milwaukee Catholic Cemeteries (historically referred to as the "Income Care Funds" and hereinafter referred to as the "Initial Trust Funds") were used to fund the Trust, which was established under both Wisconsin law and Canon Law to formalize the existing trust relationship under which the Debtor held such funds.

20. Funds designated for perpetual care continue to be deposited into the Trust for such purposes (the "New Trust Funds" and, collectively with the Initial Trust Funds, the "Perpetual Care Funds").

21. The Trust constitutes a separate and distinct legal entity from the Debtor, rather than a division or asset of the Debtor, as evidenced by all accounting related to the Trust, its independent creation and management, and its unique tax identification.

22. The Debtor does not have any rights to terminate or revoke the Trust; it holds no supervisory or other authority over the Trust. The Trust is solely controlled by the terms set forth in its formation documents.

### Application of Trust Funds

23. Since 2008, the New Trust Funds have been deposited into a bank account. The New Trust Funds are reconciled on a monthly basis, at which time such funds are sent to the Trust Custodian, U.S. Bank, for deposit.

24.     On a quarterly basis, the Trust wires a payment from the Perpetual Care Funds to the Debtor for the maintenance and preservation of, as well as the expenditures related to, the Cemetery Property.

25.     In its bankruptcy schedules, the Debtor indicates no beneficial interest in the Trust or the Perpetual Care Funds (except to the extent the Debtor receives such funds as income in exchange for the perpetual caretaking services it provides).

26.     Despite the Debtor's position, the Committee has indicated its intent to pursue the Trust's funds as assets of the Debtor's estate.  See Official Committee of Unsecured Creditors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Directing Debtor's Production of Documents, filed March 31, 2011 [Docket No. 176].

27.     Consequently, the Trust is obligated to bring this action, on behalf of itself and its beneficiaries, to preserve the interests of the beneficiaries in the Trust assets and the related perpetual care of the Cemetery Property.

**TRUST ASSETS ARE NOT PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 541(a)(1)**

28.     Pursuant to 11 U.S.C. § 541(a)(1), the Debtor's estate is comprised of all of its legal or equitable interests as of the commencement of its bankruptcy.

29.     Although bankruptcy law defines what is property of the bankruptcy estate, property interests are created and defined by state law.  Butner v. U.S., 440 U.S. 48, 55, 99 S.Ct. 914 (1979).

30.     According to Wisconsin law, a charitable trust is a trust in which the income or principal presently or in the future must be used by the trustee exclusively for a charitable purpose.  Wis. Stat. § 701.01(2).  Charitable purposes include the advancement of religion or any

other purpose the accomplishment of which is beneficial to the community. Wis. Stat. § 701.10(1).

31.     At all times, the Perpetual Care Funds constituted a charitable trust under Wisconsin law. The Trust merely formalized the existence of said charitable trust in writing pursuant to the terms set forth in the trust agreement creating the Trust, which specifically prescribes that the Trust assets (which are entirely comprised of the Perpetual Care Funds) must be used exclusively for the charitable purpose of perpetual care of the Cemetery Property.

32.     Alternatively, prior to the establishment of the Trust, the Initial Trust Funds constituted a resulting charitable trust. The Initial Trust Funds were used for the exclusive purpose of perpetual care of the Cemetery Property, which is classified as a charitable purpose under Wisconsin law. Additionally, parties who contributed funds to the Initial Trust Funds did so with the explicit understanding that such funds would be paid to the Debtor in furtherance of its mission to provide such perpetual care.

33.     A resulting trust is one implied from law and the intentions of the parties with respect to the underlying transaction. See Shevel v. Warter, 256 Wis. 503, 41 N.W.2d 603 (Wis. 1950) (citing Krzysko v. Gaudynski, 207 Wis. 608, 242 N.W. 186, 188. (Wis. 1932)).

34.     The Debtor does not have any interest of record in the Perpetual Care Funds (which, again, are comprised of the Initial Trust Funds and the New Trust Funds) or the Trust, as neither the benefit of, nor the interest in, the Perpetual Care Funds and the Trust is held with the Debtor.

35.     Having neither legal nor equitable interests in the Perpetual Care Funds or the Trust, the Debtor's interest is, at best, limited to income the Debtor receives in exchange for the perpetual caretaking services it provides.

36.     Thus, the Perpetual Care Funds are held exclusively by the Trust and subject to its complete dominion and control.  Accordingly, the Perpetual Care Funds, like the Trust itself, do not constitute property of the Debtor's estate under 11 U.S.C. § 541(a)(1).

## TRUST ASSETS ARE SPECIFICALLY EXCLUDED AS ESTATE PROPERTY UNDER 11 U.S.C. § 541(b)(1)

37.     Under 11 U.S.C. § 541(b)(1), property of the Debtor's estate does not include any property that the debtor may exercise solely for the benefit of an entity other than itself.

38.     Though the Debtor held the Perpetual Care Funds for a period of time prior to the transfer to the Trust, the Debtor had and continues to have no rights in the Perpetual Care Funds; rather, the Debtor receives Perpetual Care Funds from parties solely for the benefit of the Trust.

39.     Consequently, the Perpetual Care Funds are not an estate asset pursuant to 11 U.S.C. § 541(b)(1).

## RELIEF REQUESTED

WHEREFORE, the Trust requests that the Court enter an order:

A.     Declaring that the Trust is not property of the Debtor's estate;

B.     Declaring that the Perpetual Care Funds are not property of the Debtor's estate; and

C.     Granting such other relief as the Court deems just and appropriate

*Signatures appear on the following page*

Dated this 28th day of June, 2011.

GODFREY & KAHN, S.C.

*/s/ Timothy F. Nixon*

Timothy F. Nixon
William E. Duffin
780 North Water Street
Milwaukee, WI 53202-3590
Phone:   414-273-3500
Fax:      414-273-5198
Email:   tnixon@gklaw.com
             weduffin@gklaw.com

*Attorneys for Plaintiff, Archdiocese of Milwaukee*
*Catholic Cemetery Perpetual Care Trust*

6136122_7