## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter 11 |
| Archdiocese of Milwaukee, | Bankruptcy Case No. 11-20059-SVK |
| Debtor. | |
| Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust on behalf of itself and its beneficiaries, | Adv. Proc. No. 11-02459-SVK |
| Plaintiff, | |
| vs. | |
| Official Committee of Unsecured Creditors, | |
| Defendant. | |
| Official Committee of Unsecured Creditors, | |
| Counterclaimant, | |
| vs. | |
| Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust; and Archbishop Jerome E. Listecki, Archbishop of the Archdiocese of Milwaukee, in his capacity as sole Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, | |
| Counterdefendants. | |

### ANSWER AND AFFIRMATIVE DEFENSES; AND COUNTERCLAIMS

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
        kbrown@pszjlaw.com
        gbrown@pszjlaw.com
DOCS_LA:243987.8 05058-003

Pursuant to the authority granted to the Official Committee of Unsecured Creditors in the above-captioned bankruptcy case (the "Committee") by the *Order Approving Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Claims Related to the Adversary Complaint, and Litigate and Propose or Accept a Settlement of the Adversary Proceeding, or Part Thereof*, entered September 2, 2011 [Docket No. 12] (the "Order Conferring Standing"), the Committee hereby answers (the "Answer") the *Complaint*, filed on June 28, 2011 [Docket No. 1] (the "Complaint"), and asserts its affirmative defenses and counterclaims.

## PARTIES

### The Trust

1.    The Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and therefore generally and specifically denies those allegations.

2.    The Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, and therefore generally and specifically denies those allegations. To the extent that the allegations in paragraph 2 of the Complaint are legal conclusions, no response is required to those allegations.

3.    The Committee admits only that a trust agreement was dated April 2, 2007. The Committee generally and specifically denies the remaining allegations contained in paragraph 3 of the Complaint.

1

4.      The Committee generally and specifically denies the allegations contained in paragraph 4 of the Complaint.

5.      The Committee generally and specifically denies the allegations contained in paragraph 5 of the Complaint.

6.      To the extent that the allegations in paragraph 6 of the Complaint are legal conclusions, no response is required to those allegations.  The Committee generally and specifically denies all other allegations contained in paragraph 6 of the Complaint.

## The Committee

7.      The Committee admits the allegations contained in paragraph 7 of the Complaint.

## JURISDICTION

8.      The Committee admits the allegations contained in paragraph 8 of the Complaint.

9.      The Committee admits the allegations contained in paragraph 9 of the Complaint.

10.      The Committee admits the allegations contained in paragraph 10 of the Complaint.

## BACKGROUND

### Basis for the Trust

11.     The Committee admits that the Debtor is a Wisconsin nonstock corporation.  The Committee generally and specifically denies the remaining allegations contained in paragraph 11 of the Complaint.

12.     The Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint, and therefore generally and specifically denies those allegations.

13.     The Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint, and therefore generally and specifically denies those allegations.

14.     The Committee admits that the Debtor owns a number of cemeteries and/or mausoleums.  The Committee generally and specifically denies the remaining allegations contained in paragraph 14 of the Complaint.

15.     The Committee admits the allegations contained in paragraph 15 of the Complaint.

16.     The Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint, and therefore generally and specifically denies those allegations.

17.     The Committee admits the allegations contained in paragraph 17 of the Complaint.

18.     The Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint, and therefore generally and specifically denies those allegations.  To the extent that the allegations in paragraph 18 of the Complaint are legal conclusions, no response is required to those allegations.

19.     The Committee admits that in 2008, the Debtor transferred approximately $55 million from its account(s) to fund the Trust.  The Committee generally and specifically denies the remaining allegations in paragraph 19 of the Complaint.  In addition, to the extent that the allegations in paragraph 19 of the Complaint are legal conclusions, no response is required to those allegations.

20.     The Committee admits that the Debtor continues to deposit funds into the Trust.  The Committee generally and specifically denies the remaining allegations in paragraph 20 of the Complaint.  In addition, to the extent that the allegations in paragraph 20 of the Complaint are legal conclusions, no response is required to those allegations.

21.     The Committee generally and specifically denies the allegations in paragraph 21 of the Complaint.  In addition, to the extent that the allegations in paragraph 21 of the Complaint are legal conclusions, no response is required to those allegations.

22.     The Committee generally and specifically denies the allegations in paragraph 22 of the Complaint.

## Application of Trust Funds

23.     The Committee admits that the Debtor continues to deposit funds into the Trust and that U.S. Bank is the Trust Custodian over the funds in the Trust. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23 of the Complaint, and therefore generally and specifically denies those allegations.

24.     The Committee admits that funds flow from the Trust account to the Debtor's account(s) on a quarterly basis. The Committee generally and specifically denies the remaining allegations in paragraph 24 of the Complaint.

25.     The Committee admits the allegation in paragraph 25 of the Complaint that the Debtor's bankruptcy schedules set forth the Debtor's position concerning the Trust and the Perpetual Care Funds, and that the Debtor did not list the Cemetery Trust, or the assets therein, as property of the estate. However, the Committee generally and specifically denies the truth of the Debtor's representations in its bankruptcy schedules regarding its interests in the Trust and the Perpetual Care Funds.

26.     The Committee admits the allegations in paragraph 26 of the Complaint.

27.     The Committee generally and specifically denies the allegations in paragraph 27 of the Complaint. In addition, to the extent that the allegations in paragraph 27 of the Complaint are legal conclusions, no response is required to those allegations.

## TRUST ASSETS ARE NOT PROPERTY OF THE ESTATE

## UNDER 11 U.S.C. §541(a)(1)

28. The allegations in paragraph 28 of the Complaint are legal conclusions to which no response is required. In addition, the Committee generally and specifically denies the allegations in paragraph 28 of the Complaint insofar as they do not provide the full text of 11 U.S.C. §541(a) regarding the property that comprises a bankruptcy estate.

29. The allegations in paragraph 29 of the Complaint are legal conclusions to which no response is required.

30. The allegations in paragraph 30 of the Complaint are legal conclusions to which no response is required.

31. The Committee generally and specifically denies the allegations in paragraph 31 of the Complaint. In addition, to the extent that the allegations in paragraph 31 of the Complaint are legal conclusions, no response is required to those allegations.

32. The Committee generally and specifically denies the allegations in paragraph 32 of the Complaint. In addition, to the extent that the allegations in paragraph 32 of the Complaint are legal conclusions, no response is required to those allegations.

33. The allegations in paragraph 33 of the Complaint are legal conclusions to which  no response is required.

34. The Committee generally and specifically denies the allegations in paragraph 34 of the Complaint.

35. The Committee generally and specifically denies the allegations in paragraph 35 of the Complaint.

36. The Committee generally and specifically denies the allegations in paragraph 36 of the Complaint. In addition, to the extent that the allegations in paragraph 36 of the Complaint are legal conclusions, no response is required to those allegations.

## TRUST ASSETS ARE SPECIFICALLY EXCLUDED AS ESTATE PROPERTY UNDER 11 U.S.C. §541(B)(1)

37. The allegations in paragraph 37 of the Complaint are legal conclusions to which no response is required.

38. The Committee admits that allegation in paragraph 38 of the Complaint that the Debtor held the Perpetual Care Funds. However, the Committee generally and specifically denies the remaining allegations in paragraph 38 of the Complaint. In addition, to the extent that the allegations in paragraph 38 of the Complaint are legal conclusions, no response is required to those allegations.

39. The Committee generally and specifically denies the allegations in paragraph 39 of the Complaint. In addition, to the extent that the allegations in paragraph 39 of the Complaint are legal conclusions, no response is required to those allegations.

## RELIEF REQUESTED

40. The Committee generally and specifically deny each of the Trust's requests for relief under the heading of the Complaint reading, "Relief Requested."

## AFFIRMATIVE DEFENSES

The Committee asserts the following affirmative defenses without assuming the burden of proof when the burden of proof would otherwise be on the Trust.

1.    Failure to join a party (Federal Rule of Bankruptcy Procedure 7019): The Trust[1] has failed to name the Debtor Archdiocese of Milwaukee as a party to this adversary proceeding.

2.    Real party in interest:  The Debtor Archdiocese of Milwaukee, not the Committee, is a real party in interest in this adversary proceeding.  The Order Conferring Standing provides that the Committee may defend allegations in the Complaint on behalf of the estate.

3.    Doctrine of merger: Under the doctrine of merger, a valid trust cannot exist where the same entity holds the legal and beneficial interests in alleged trust assets. Here, the Debtor and the Trust constitute a single entity.  The Trust is an alter ego of the Debtor.  The assets of the Trust are held and used for the benefit of the Debtor and to fulfill the purposes of the Debtor.  The Debtor holds all of the legal and beneficial interests in the alleged trust assets.

4.    The Trust is not a valid trust: The Committee contends that the Trust is not valid because neither the Debtor nor alleged beneficiaries/persons who paid the Debtor for cemetery services understood or intended to keep the alleged trust funds in trust.

---

[1]  The Committee's use of the term "Trust" is not an admission or acknowledgment that the Trust is valid.

5. <u>Fraud</u>: The Debtor created and funded the Trust in an effort to defraud the Debtor's creditors.

6. <u>Identifying/Tracing Alleged Trust Assets</u>: Should the Court determine that the Trust is valid, the Trust still has the burden of identifying and tracing which of the funds in the Trust are trust funds. The mere fact that the funds are held in a segregated trust account is not sufficient to establish that those funds are trust funds where, as here, the funds had been commingled with the Debtor's non-trust funds prior to being transferred to the segregated trust account and the Trust cannot prove that its alleged trust funds were transferred from the commingled account under the intermediate balance test. All of the alleged trust funds in the Trust were previously commingled with non-trust funds in at least two of the Debtor's bank accounts before those funds were eventually transferred into the Trust, and the Trust cannot show that the alleged trust funds, rather than the Debtor's non-trust funds, were transferred from the commingled accounts into the Trust's account. Thus, the initial transfer of approximately $55 million into the Trust in March 2008 contained property of the estate, not identifiable trust funds.

7. <u>Alter ego</u>: The Trust is the alter ego of the Debtor such that the Trust and the Debtor constitute a single entity due to the Debtor's high degree of domination and control over the Trust, including, but not limited to, the fact that the sole Corporate Member of the Debtor is the sole Trustee of the Trust. It would be unfair and inequitable to treat the Debtor and the Trust as separate entities because this would allow the Debtor to transfer more

than $55 million to a controlled entity for the purpose of placing the funds beyond the reach of sex abuse survivors and other creditors of the Debtor.

        8.    <u>Substantive consolidation</u>: Assuming the Trust is determined to be valid, the Trust is a mere instrumentality of the Debtor with no separate existence apart from the Debtor. Substantive consolidation of Trust with the Debtor will allow a truly equitable distribution of assets among the Debtor's creditors by treating the Debtor and the Trust as a single economic unit.

        9.    <u>Unclean Hands</u>: The Trust's claims are barred, in whole or in part, by the doctrine of unclean hands.

        10.    <u>Reservation</u>: The Committee reserves the right to assert any other defenses based on facts obtained through discovery in this adversary proceeding.

## COUNTERCLAIMS

        The Official Committee of Unsecured Creditors in the above-captioned bankruptcy case (the "<u>Committee</u>") counterclaims as follows:

## INTRODUCTION

        1.    On June 28, 2011, the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (the "<u>Trust</u>")[2] filed its *Complaint* (the "<u>Complaint</u>"), seeking declaratory relief that that the Trust is not property of the bankruptcy estate of the Archdiocese of Milwaukee ("<u>Debtor</u>" or "<u>AOM</u>") and that the funds in the Trust are not property of the Debtor's estate. The Committee is the only defendant named in this adversary proceeding.

---

[2] The Committee's use of the term "Trust" is not an admission or acknowledgment that the Trust is valid.

Notably, the Trust did not name as a defendant the Debtor whose estate is to be directly impacted by this adversary proceeding. The Committee believes this is because AOM created the Trust, and because the Archbishop of AOM also serves concurrently as the sole trustee of the Trust. At the time the Trust was created in 2007, the Archbishop of AOM executed the trust agreement establishing the Trust in his capacity both as Trustor of the Trust on behalf of AOM *and* as the sole Trustee of the Trust. Thus, had the Debtor been named as a defendant here, the Archbishop would in effect be in charge of both the plaintiff and the defendant in this adversary proceeding. The Archbishop's control over both the Debtor and the Trust, and his primary objective of shielding the alleged trust funds from the claims of the sex abuse survivors rather than maximizing the estate is beyond legitimate dispute.

2. Therefore, the Committee believes that it is the only party which can properly represent the interests of the Debtor's bankruptcy estate and its creditors in this adversary proceeding. Pursuant to a stipulation between the Committee, the Debtor, and the Trust, the Court has ordered that the Committee is granted derivative standing to assert and litigate the following Counterclaims, set forth below (the "Counterclaims").

3. By its Counterclaims, the Committee seeks to avoid and recover as fraudulent and preferential transfers more than $55 million to be brought into the Debtor's bankruptcy estate for the benefit of the estate and the Debtor's creditors. In addition, the Committee seeks an order of this Court that the Trust is not valid and/or that the funds in the Trust constitute property of the Debtor's bankruptcy estate.

4.      At the time the Debtor allegedly created the Trust in 2007, the Debtor was defending itself in Wisconsin state court lawsuits, which sought damages against it relating to sex abuse.  The Committee contends that the Debtor created and funded the Trust to put the Debtor's assets out of reach of the survivors of sex abuse in the event that they obtained judgments against the Debtor.  The Committee also contends that the transfers of funds to the Trust constitute fraudulent and preferential transfers of the Debtor's assets.  In or about March 2008, the Debtor initially funded the Trust with a transfer of approximately $55 million from its own account into the Trust.  In addition, the Committee is informed and believes that additional funds have been transferred from the Debtor's accounts into the Trust after that initial $55 million transfer, and that those transfers should also be avoided and recovered.

5.      The resolution of this litigation is critical to the bankruptcy estate because it will determine whether significant, additional assets become part of the estate for distribution to creditors.

## JURISDICTION

6.      This Court has jurisdiction over the instant adversary proceeding, including the Counterclaims, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334; 11 U.S.C. § 105; and Federal Rules of Bankruptcy Procedure 7001 and 7013.

7.      Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1409.

8.      This adversary proceeding, including the Counterclaims, constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PARTIES

9.      On or about January 24, 2011, the United States Trustee appointed Defendant/Counterclaimant, the Committee, to represent the Debtor's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).

10.     The Committee has standing to bring the Counterclaims pursuant to the *Order Approving Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Claims Related to the Adversary Complaint, and Litigate and Propose or Accept a Settlement of the Adversary Proceeding, or Part Thereof*, entered September 2, 2011 [Docket No. 12].

11.     Plaintiff/Counterdefendant, the Trust, alleges that the Trust was created on or about April 2, 2007 pursuant to the *Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust* (the "Trust Agreement").

12.     Counterdefendant, Archbishop Jerome E. Listecki, the Archbishop of the Archdiocese of Milwaukee, is sued in his capacity as sole Trustee of the Trust ("Archbishop Listecki"). A prior Archbishop of the AOM, Archbishop Timothy M. Dolan, executed the Trust Agreement in 2007 in his dual capacities as Archbishop of the AOM and sole Trustee of the Trust. The Archbishop is also the sole Corporate Member of the AOM. The Trust and Archbishop Listecki shall be referred to collectively as the "Counterdefendants."

## BACKGROUND

A.      Creation and Funding of the Alleged Trust

13.      In 2005, sex abuse survivors sued the Debtor in Wisconsin state court seeking damages for the sexual abuse of children in the Archdiocese.[3]

14.      AOM defended itself in these cases (the "Sex Abuse Cases").

15.      The Sex Abuse Cases are still pending but are stayed due to the filing of the Debtor's bankruptcy case.

16.      On or about April 2, 2007, then-Archbishop Timothy M. Dolan executed the Trust Agreement. Archbishop Dolan executed the Trust Agreement on behalf of both parties to the Trust Agreement: AOM as Trustor and AOM as Trustee. The preamble to the Trust Agreement and the third recital of the Trust Agreement state that "the Archbishop, in his official capacity as Archbishop" is the Trustee of the Trust.

17.      The Trust Agreement states that the Trust's purpose is "for the exclusive benefit, in perpetuity, of the Cemeteries and Mausoleums" within the geographic boundaries of the Archdiocese. *See* Trust Agreement, Section 2.1; *see also id.* at First Whereas clause. The Debtor owns those cemeteries and mausoleums in the geographic boundaries of the Archdiocese. *See* Schedule A of the Debtor's Summary of Schedules, filed on February 7, 2011 [Docket No. 111 in the above-captioned bankruptcy case]. The Debtor is obligated to operate and maintain those cemeteries and mausoleums.

---

[3]  Upon information and belief, other sex abuse survivors had filed state court lawsuits against the Debtor as early as 2002 but those cases are no longer pending.

18.     In July 2007, the Wisconsin Supreme Court ruled that the Sex Abuse Cases were not time-barred (contrary to the Debtor's argument).  Therefore, the Sex Abuse Cases continued against the Debtor.

19.     In March 2008, while the Sex Abuse Cases against the Debtor were proceeding toward trial, the Debtor transferred approximately $55 million of its funds (the "Initial $55 Million Transfer") to an account at U.S. Bank for the alleged benefit of the Trust (the "Trust Account").

20.     The funds that constituted the Initial $55 Million Transfer had not previously been held in an express trust prior to the transfer into the Trust Account.

21.     Prior to March 2008, the Debtor's balance sheet recorded the funds used for the Initial $55 Million Transfer as "Assets designated for the future care of cemeteries and mausoleums, primarily cash and investments."  Based upon a review of the Debtor's Great Plains general ledger accounting system ("Great Plains"), from at least fiscal year 2002 to fiscal year 2007, when a customer purchased cemetery goods or services from a cemetery in the Archdiocese, these alleged trust funds (the "Cemetery Funds") were deposited into a Debtor-owned bank account at Marshall & Ilsley Bank ("M&I Account").  Upon information and belief, the Cemetery Funds were commingled in the M&I Account with non-trust funds.  The Committee is informed and believes that prior to 2002, the Debtor commingled Cemetery Funds with non-trust funds.

22.     The Committee is informed and believes that prior to March 2008, the Debtor would transfer alleged trust funds from the M&I Account to an account that the

Debtor owned at U.S. Bank. Upon information and belief, as of March 2008, the balance in the Debtor's account at U.S. Bank was approximately $55 million.

23.    The Committee is informed and believes that in March 2008, when the specter of verdicts against the Debtor in the Sex Abuse Cases created a risk that the Debtor's assets could be subject to judgments in favor of the sex abuse survivors, the Debtor directed U.S. Bank to liquidate the Debtor's account and transfer the $55 million in that liquidated account to the Trust Account.

24.    The Committee is informed and believes that even after making the Initial $55 Million Transfer to the Trust, the Debtor continued, and still continues, making periodic transfers of funds from accounts the Debtor owns to the Trust Account (the "Subsequent Transfers"). The Committee is informed and believes that the funds used to make these Subsequent Transfers, even if they were Cemetery Funds, were commingled in the Debtor's accounts with non-trust funds in numerous Debtor-owned bank accounts.

25.    Based upon a review of Great Plains, beginning in fiscal year 2008, when a customer purchased cemetery goods or services from a cemetery in the Archdiocese, those Cemetery Funds were deposited into a bank account that the Debtor owned at Park Bank (the "Park Bank Account"). The Cemetery Funds were then transferred to the M&I Account. Upon information and belief, the Cemetery Funds were commingled with non-trust funds in both the Park Bank Account and the M&I Account. The Committee is informed and believes that currently, at least for fiscal year 2011, when a customer purchases cemetery goods or services from a cemetery in the Archdiocese, those Cemetery Funds are deposited

into one of several bank accounts that the Debtor owns (which the Committee is informed and understands are referred to as the "burial account," the "mausoleum account," and the "split account"). Also upon information and belief, the amount of the Cemetery Funds are then transferred into the Park Bank Account, where they are commingled with non-trust funds. The Committee is further informed and believes that the Debtor transfers the amount of the Cemetery Funds from the Park Bank Account to its account at Johnson Bank (the "Johnson Bank Account") where these funds are again commingled with non-trust funds. According to Great Plains, from June 2008 through May 2011 (the last date for which the Committee has information on Great Plains), the Debtor transferred or disbursed more than $2.5 million in Subsequent Transfers from the M&I Account and the Johnson Bank Account to the following three entities: (1) Archdiocese of Milwaukee Income Care Fund ("ARCHDIOCESE OF MILW-INC CR FND"), (2) Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust ("ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST") and (3) Archdiocese of Milwaukee Perpetual Care Trust ("ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST"). The following table identifies the dates and amounts of the Subsequent Transfers:

| Date | Entity Name | Amount |
|------|-------------|--------|
| 06/13/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | $1,300,000.00 |
| 06/20/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | 34,154.03 |
| 08/14/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | 65,078.78 |
| 09/16/08 | ARCHDIOCESE OF MILW-INC CR FND | 352,330.00 |
| 02/24/09 | ARCHDIOCESE OF MILW-INC CR FND | 152,230.00 |
| 04/03/09 | ARCHDIOCESE OF MILW-INC CR FND | 42,205.00 |
| 05/01/09 | ARCHDIOCESE OF MILW-INC CR FND | 29,927.50 |

| | | |
|---|---|---|
| 06/26/09 | ARCHDIOCESE OF MILW-INC CR FND | 48,745.00 |
| 08/14/09 | ARCHDIOCESE OF MILW-INC CR FND | 20,937.50 |
| 10/30/09 | ARCHDIOCESE OF MILW-INC CR FND | 77,187.50 |
| 11/24/09 | ARCHDIOCESE OF MILW-INC CR FND | 28,415.00 |
| 01/05/10 | ARCHDIOCESE OF MILW-INC CR FND | 24,430.00 |
| 01/22/10 | ARCHDIOCESE OF MILW-INC CR FND | 21,785.00 |
| 02/19/10 | ARCHDIOCESE OF MILW-INC CR FND | 16,225.00 |
| 03/19/10 | ARCHDIOCESE OF MILW-INC CR FND | 17,250.00 |
| 04/23/10 | ARCHDIOCESE OF MILW-INC CR FND | 27,372.50 |
| 05/28/10 | ARCHDIOCESE OF MILW-INC CR FND | 25,580.00 |
| 06/29/10 | ARCHDIOCESE OF MILW-INC CR FND | 23,275.00 |
| 07/30/10 | ARCHDIOCESE OF MILW-INC CR FND | 31,330.00 |
| 09/28/10 | ARCHDIOCESE OF MILW-INC CR FND | 34,062.50 |
| 10/15/10 | ARCHDIOCESE OF MILW-INC CR FND | 27,618.75 |
| 11/23/10 | ARCHDIOCESE OF MILW-INC CR FND | 26,686.25 |
| 12/17/10 | ARCHDIOCESE OF MILW-INC CR FND | 16,750.00 |
| 02/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 31,687.50 |
| 03/18/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 13,750.00 |
| 04/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 32,150.00 |
| 05/13/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 23,800.00 |

The Committee is informed and believes that all of these Subsequent Transfers were deposited into the Trust Account and that the three different entities listed on Great Plains are simply different names for the Trust; however, verification from the Debtor is pending.

B.    The Bankruptcy Case

26.    On January 4, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code").  The Debtor continues to operate its business as a debtor in possession.

C.    The Trust Litigation

27.    On June 28, 2011, the Trust filed the Complaint commencing this adversary proceeding.  The Trust named the Committee as the sole defendant.  The Complaint asserts two claims for relief: (1) the Trust seeks a declaration of the Court that the assets in the Trust are not property of the Debtor's bankruptcy estate pursuant to section 541(a)(1) of the

Bankruptcy Code; and (2) the Trust seeks a declaration of the Court that the assets in the Trust are specifically excluded as property of the Debtor's estate under section 541(b)(1) of the Bankruptcy Code.

**FIRST COUNTERCLAIM**

**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer**

**Pursuant to 11 U.S.C. §§ 544(b) and 550, and**

**Wis. Stat. 242.04(1)(a) and 242.07)**

**(against both Defendants)**

28.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

29.     The $55 Million Initial Transfer was made with an actual intent to hinder, delay, or defraud any creditor of the Debtor.

30.     At least one creditor's claim arose before or after the Initial $55 Million Transfer was made, including, but not limited to, the plaintiffs who filed the Sex Abuse Cases (the "Sex Abuse Plaintiffs") that were pending against the Debtor in 2008 when the Debtor made the Initial $55 Million Transfer to the Trust.  The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

31.     At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(a).

32.     The $55 Million Initial Transfer should be avoided as fraudulent pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(a). The Debtor's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to 11 U.S.C. §550 and Wis. Stat. 242.07.

## SECOND COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Initial $55 Million Transfer

### Pursuant to 11 U.S.C. §§ 544(b) and 550, and

### Wis. Stat. 242.04(1)(b) and 242.07)

### (against both Defendants)

33.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

34.     The Debtor did not receive reasonably equivalent value in exchange for making the Initial $55 Million Transfer to the Trust because the Trust did not provide the Debtor with any consideration whatsoever in return for that Initial $55 Million Transfer.

35.     The Debtor (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that the Debtor would incur debts beyond its ability to pay as they became due. This is because the Debtor's liabilities were greater than its assets due to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

36.     At least one creditor's claim arose before or after the Initial $55 Million Transfer was made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

37.     At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(b).

38.     The $55 Million Initial Transfer should be avoided as fraudulent pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(b). The Debtor's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to 11 U.S.C. §550 and Wis. Stat. 242.07.

## THIRD COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer**

**Pursuant to 11 U.S.C. §§ 544(b) and 550, and**

**Wis. Stat. 242.05(1) and 242.07)**

**<u>(against both Defendants)</u>**

39.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

40.     The Debtor did not receive reasonably equivalent value in exchange for making the Initial $55 Million Transfer to the Trust because the Trust did not provide the Debtor with any consideration whatsoever in return for that Initial $55 Million Transfer.

41.     The Debtor (a) was insolvent at the time it made the Initial $55 Million Transfer; or (b) became insolvent as a result of the Initial $55 Million Transfer.  The Debtor was insolvent because its liabilities were greater than its assets.  This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

42.     At least one creditor's claim arose before the Initial $55 Million Transfer was made, including, but not limited to, the Sex Abuse Plaintiffs.  The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

43.     At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.05(1).

44.     The $55 Million Initial Transfer should be avoided as fraudulent pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.05(1).  The Debtor's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to 11 U.S.C. §550 and Wis. Stat. 242.07.

## FOURTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers

### Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)

### <u>(against both Defendants)</u>

45.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

46.     The Committee is informed and believes that in the two years prior to the Petition Date (and even prior to that), the Debtor made Subsequent Transfers to the Trust Account.

47.     The Debtor made the Subsequent Transfers with the intent to hinder, delay, or defraud the Debtor's creditors, including, but not limited to, the Sex Abuse Plaintiffs and other sex abuse survivors who had (and still have) claims against the Debtor for sexual abuse committed in the Archdiocese.

48.     At all relevant times, the Subsequent Transfers made within the two years prior to the Petition Date were and are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

49.     The Subsequent Transfers made within the two years prior to the Petition Date should be avoided as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(A). The Debtor's estate is entitled to recover the Subsequent Transfers made within the two years prior to the Petition Date, or the value thereof, pursuant to 11 U.S.C. §550.

## FIFTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers

### Pursuant to 11 U.S.C. §§ 544(b) and 550, and

### Wis. Stat. 242.04(1)(a) and 242.07

### (against both Defendants)

50.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

51.     The Subsequent Transfers made in the four years prior to the Petition Date were made with an actual intent to hinder, delay, or defraud any creditor of the Debtor.

52.     At least one creditor's claim arose before or after the Subsequent Transfers, or any of them, were made, including, but not limited to, the Sex Abuse Plaintiffs.  The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

53.     At all relevant times, the Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(a).

54.     The Subsequent Transfers made within four years prior to the Petition Date should be avoided as fraudulent pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(a).  The Debtor's estate is entitled to recover the Subsequent Transfers made within four years prior to the Petition Date, or the value thereof, pursuant to 11 U.S.C. §550 and Wis. Stat. 242.07.

## SIXTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers

### Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)

### (against both Defendants)

55.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

56.     The Debtor did not receive reasonably equivalent value in exchange for making the Subsequent Transfers to the Trust in the two years prior to the Petition Date because the Trust did not provide the Debtor with any consideration whatsoever in return for those Subsequent Transfers.

57.     The Debtor:  (a) was insolvent, or became insolvent as a result of the Subsequent Transfers made in the two years prior to the Petition Date; (b) was engaged in or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.  The Debtor was insolvent because its liabilities were greater than its assets.  This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

58.     At all relevant times, the Subsequent Transfers made within two years prior to the Petition Date were and are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

59.     The Subsequent Transfers made within two years prior to the Petition Date should be avoided as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B).  The Debtor's estate is entitled to recover the Subsequent Transfers made within the two years prior to the Petition Date, or the value thereof, pursuant to 11 U.S.C. §550.

## SEVENTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers

### Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. 242.04(1)(b) and 242.07)

### <u>(against both Defendants)</u>

60.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

61.     The Debtor did not receive reasonably equivalent value in exchange for making the Subsequent Transfers to the Trust within the four years prior to the Petition Date because the Trust did not provide the Debtor with any consideration whatsoever in return for those Subsequent Transfers.

62.     The Debtor (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that the Debtor would incur debts beyond its ability to pay as they became due.  This is because the Debtor's liabilities were greater than its assets due to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

63.     At least one creditor's claim arose before or after the Subsequent Transfers, or any of them, were made, including, but not limited to the Sex Abuse Plaintiffs.  The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

64.     At all relevant times, the Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(b).

65.     The Subsequent Transfers made in the four years prior to the Petition Date should be avoided as fraudulent pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.04(1)(b).  The Debtor's estate is entitled to recover the Subsequent Transfers, or the value thereof, pursuant to 11 U.S.C. §550 and Wis. Stat. 242.07.

## EIGHTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers

### Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. 242.05(1) and 242.07)

### (against both Defendants)

66.     The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

67.     The Debtor did not receive reasonably equivalent value in exchange for making the Subsequent Transfers to the Trust in the four years prior to the Petition Date because the Trust did not provide the Debtor with any consideration whatsoever in return for those Subsequent Transfers.

68.     The Debtor (a) was insolvent at the time it made the Subsequent Transfers, or any of them; or (b) became insolvent as a result of the Subsequent Transfers, or any of them.  The Debtor was insolvent because its liabilities were greater than its assets.

This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

69. At least one creditor's claim arose before the Subsequent Transfers, or any of them, were made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

70. At all relevant times, Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.05(1).

71. The Subsequent Transfers made within four years prior to the Petition Date should be avoided as fraudulent pursuant to 11 U.S.C. §544(b) and Wis. Stat. 242.05(1). The Debtor's estate is entitled to recover the Subsequent Transfers made within four years prior to the Petition Date, or the value thereof, pursuant to 11 U.S.C. §550 and Wis. Stat. 242.07.

## NINTH COUNTERCLAIM

### (Avoidance and Recovery of Preferential Subsequent Transfers

### Pursuant to 11 U.S.C. §§ 547 and 550)

### (against both Defendants)

72. The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

73. The Subsequent Transfers that the Debtor made to the Trust in the one year prior to the Petition Date were made to the Trust as a creditor of the Debtor on account of

an antecedent debt between the Debtor and the Trust that existed before the Subsequent Transfers were made. The Committee is informed and believes that the Trust had a claim against the Debtor for the Subsequent Transfers beginning in or about 2008 and continuing until the present.

74. Section 101(31) of the Bankruptcy Code defines an "insider" of a corporation to include a director, officer, or person in control of the debtor, among other things. Archbishop Listecki, the sole Corporate Member of the Debtor and the person in control of the Debtor, is also the sole Trustee of the Cemetery Trust in control of the Trust.

75. The Subsequent Transfers were made while the Debtor was insolvent.

76. The Subsequent Transfers to the Trust enabled the Trust to receive more than it would have received if: (i) the Debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code; (ii) the Subsequent Transfers had not been made; and (iii) the Trust received payment on the debt to the extent provided by the Bankruptcy Code.

77. Accordingly, the Subsequent Transfers made in the 90 days before the Petition Date, in the amount of not less than $71,055.00 (the "90-Day Preferential Transfers") are avoidable, and should be avoided, as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550. The Debtor's estate is entitled to recover from the Trust the value of the 90-Day Preferential Transfers, in an amount of not less than $71,055.00, made during the 90 days before the Petition Date.

78. In addition, the Subsequent Transfers made in the one year before the Petition Date, in the amount of not less than $292,365.00 (the "One-Year Preferential

Transfers") are avoidable, and should be avoided, as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550. The Debtor's estate is entitled to recover from the Trust the value of the One-Year Preferential Transfers, in an amount of not less than $292,365.00, made during the one year before the Petition Date.

## TENTH COUNTERCLAIM

### (Declaratory Relief: The Funds and Assets in the Trust are Property
### of the Debtor's Estate under Section 541(a)(1))

### (against both Defendants)

79. The Committee realleges and incorporates by reference each and every allegation set forth in the paragraphs above as if fully set forth here.

80. Under the doctrine of merger, a valid trust cannot exist and is void where the same entity holds the legal and beneficial interests in alleged trust assets. The Debtor and the Trust constitute a single entity because the Trust is an alter ego of the Debtor. The Trust was created and is used for the benefit of the Debtor to fund the Debtor's obligation to provide perpetual care to the cemeteries and mausoleums that the Debtor owns within the geographic boundaries of the Archdiocese. Therefore, the Debtor holds both the legal and beneficial interests in the alleged trust assets. The Trust has no separate existence of its own and is a mere instrumentality of the Debtor. The Trust was created to insulate the Debtor's assets and make them unavailable to satisfy the claims of the Sex Abuse Plaintiffs, and continues to be used to evade the Debtor's obligation to fairly compensate the survivors of sex abuse and other unsecured creditors, thereby resulting in an injustice. The Debtor, through

the Archbishop, controlled every aspect of the creation of the Trust and Archbishop Listecki continues to control the administration of the Trust and the disposition of its assets: the Archbishop is both the sole Corporate Member of the Debtor and the sole Trustee of the Trust. Archbishop Listecki's predecessor, Archbishop Timothy M. Dolan, executed the Trust Agreement on behalf of both the Trustor and the Trustee. The creation and funding of the Trust caused the Debtor to be undercapitalized and insolvent. Moreover, the Committee is informed and believes that the only funds in the Trust or that have ever been deposited into the Trust are funds that the Debtor transfers into the Trust Account from accounts that the Debtor owns (and that were or are commingled with non-trust funds). The Trust would not exist, would not have any reason to exist, and would not have any funds in the Trust Account were it not for the Debtor's actions in shielding its assets from the claims of the Sex Abuse Plaintiffs. The Debtor's creation of the Trust and transfers of funds from accounts the Debtor owns are proximate causes of harm to the survivors of sex abuse and the Debtor's other creditors because the Debtor's actions have reduced the property of the estate that would otherwise be available to pay the estate's creditors.

81.     The Trust is the alter ego of the Debtor. The Trust assets are held and used for the benefit of the Debtor. The Debtor holds the legal and beneficial interests in the alleged trust assets. No express or resulting trust can exist with respect to the funds and assets in the Trust.

82.     However, even if the Trust is determined to be valid, the Trust has the burden of identifying and tracing funds that belong to it. All of the funds in the Trust were

previously commingled with non-trust funds in at least three bank accounts that the Debtor owned before those funds were eventually transferred to the Trust. The Trust bears the burden of identifying or tracing which of those commingled funds are alleged trust funds under the lowest intermediate balance test with respect to each of the accounts in which the alleged trust funds had been commingled with non-trust funds before they were transferred into the Trust. All of the previously commingled funds in the Trust that are not identified or traced as trust funds at the time they were transferred to the Trust are property of the Debtor's estate.

83. In its Complaint, the Trust alleges that the Debtor has no rights in the funds and assets held in the Trust. Therefore, an actual and justiciable controversy exist as to (a) whether the legal and beneficial interest in the alleged Trust is held by the same legal entity such that the alleged Trust is void; and (b) whether the Trust can meet its burden to prove that all of the funds deposited into the Trust Account, which were previously commingled with non-trust funds in the Debtor's accounts, can be identified and traced as trust assets under the lowest intermediate balance test.

84. Accordingly, the Committee respectfully prays for a judgment declaring that (a) the funds and assets in the Trust are not held in trust by the Trust for the benefit of others, and therefore the funds and assets in the Trust constitute property of the Debtor's estate; and (b) all funds in the Trust that the Trust cannot identify and trace under the lowest intermediate balance test are property of the Debtor's estate.

WHEREFORE, the Committee prays for judgment as follows:

1.      For a determination that the Initial $55 Million Transfer, the Subsequent Transfers, the 90-Day Preferential Transfers, and the One-Year Preferential Transfers are avoidable as fraudulent and/or preferential transfers pursuant to Sections 544, 547, and/or 548 of the Bankruptcy Code, and Wis. Stat. 242.04 and 242.05;

2.      For a determination that the Debtor's bankruptcy estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, in an amount to be determined, but not less than $55 million, pursuant to Section 550 of the Bankruptcy Code and Wis. Stat. 242.07;

3.      For a determination that the Debtor's bankruptcy estate is entitled to recover the Subsequent Transfers, or the value thereof, in an amount to be determined, pursuant to Section 550 of the Bankruptcy Code and Wis. Stat. 242.07;

4.      For a determination that the Debtor's bankruptcy estate is entitled to recover the 90-Day Preferential Transfers, and the One-Year Preferential Transfers, or the value thereof, in an amount to be determined, but believed not to be less than $71,055.00 with regard to the 90-Day Preferential Transfers and not less than $292,365.00 with regard to the One-Year Preferential Transfer, pursuant to Section 550 of the Bankruptcy Code;

5.      For prejudgment interest;

6.      For order declaring that the Trust is not a valid trust and/or declaring that the Trust is void under the doctrine of merger because the Debtor holds both the legal and beneficial interests in the alleged trust assets;

7. For an order declaring that even if the Trust is a valid Trust, the Trust has not met its burden to identify and trace all funds in the Trust Account that had been commingled with other non-trust funds prior to being transferred to the Trust Account, and therefore all of the funds in the Trust Account that cannot be traced under the lowest intermediate balance test constitute property of the Debtor's bankruptcy estate under Section 541(a)(1) of the Bankruptcy Code; and

8. For such other and further relief as the Court may deem just and proper.

Dated:    September 12, 2011

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By    /s/
_____
James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:  jstang@pszjlaw.com
          kbrown@pszjlaw.com
          gbrown@pszjlaw.com

-and-

Albert Solochek (State Bar No. 1011075)
Jason R. Pilmaier (State Bar No. 1070638)
Howard, Solochek & Weber, S.C.
324 E. Wisconsin Ave., Suite 1100
Milwaukee, WI  53202
Telephone:  (414) 272-0760
Facsimile:  (414) 272-7265
E-mail:  asolochek@hswmke.com
          jpilmaier@hswmke.com

Attorneys for the Official Committee of
Unsecured Creditors