# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter 11 |
| Archdiocese of Milwaukee, | Bankruptcy Case No. 11-20059-SVK |
| Debtor. | |
| Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, | Adv. Proc. No. 11-02459-SVK |
| Plaintiff, | |
| vs. | |
| Official Committee of Unsecured Creditors, | |
| Defendant. | |
| Official Committee of Unsecured Creditors, | |
| Counterclaimant, | |
| vs. | |
| Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, | |
| Counterdefendant. | |

## FIRST AMENDED ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES; AND FIRST AMENDED COUNTERCLAIMS

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
        kbrown@pszjlaw.com
        gbrown@pszjlaw.com
DOCS_LA:252441.3 05058-003

Pursuant to the authority granted to the Official Committee of Unsecured Creditors in the above-captioned bankruptcy case (the "Committee") by the *Order Approving Second Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Claims Related to the Adversary Complaint, and Litigate and Propose or Accept a Settlement of the Adversary Proceeding, or Part Thereof*, entered on February 2, 2012 [Docket No. 39] (the "Second Order Conferring Standing"), the Committee hereby answers (the "Amended Answer") the *Amended Complaint*, filed on January 13, 2012 [Docket No. 34] (the "Amended Complaint"), filed by Archbishop Jerome E. Listecki ("Archbishop Listecki"), as Trustee of the Archdiocese of Milwaukee Perpetual Care Trust and asserts its affirmative defenses and counterclaims.

1.     In response to the allegations in paragraph 1 of the Amended Complaint, the Committee admits that the Archdiocese of Milwaukee ("ADOM" or the "Debtor") is a Wisconsin nonstock corporation. The Committee denies the remaining allegations contained in paragraph 1 of the Amended Complaint.

2.     In response to the allegations in paragraph 2 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Amended Complaint, and therefore denies those allegations.

3.     In response to the allegations in paragraph 3 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 3 of the Amended Complaint, and therefore denies those allegations.

       4.      In response to the allegations in paragraph 4 of the Amended Complaint, the Committee admits that ADOM operates and maintains the cemeteries and mausoleums that it owns in furtherance of its corporate purpose. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4 of the Amended Complaint, and therefore denies those allegations.

       5.      The Committee denies the allegations contained in paragraph 5 of the Amended Complaint.

       6.      In response to the allegations in paragraph 6 of the Amended Complaint, the Committee admits that former Archbishop Timothy M. Dolan ("Archbishop Dolan"), on behalf of ADOM executed that certain "Trust Agreement Creating The Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust" ("Cemetery Trust Agreement")[1] and that Archbishop Listecki is the current Archbishop of the Archdiocese of Milwaukee and currently serves as trustee of The Archdiocese of Milwaukee Catholic

---

[1] The Committee believes that the use of the term "Juridic Trust" in the Amended Complaint to refer to the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust is inaccurate and misleading to the extent it suggests that the trust is an ecclesiastical or Cannon law based juridic entity which may be entitled to some deference or special treatment. Therefore, the Committee uses the term "Cemetery Trust" rather than "Juridic Trust" to refer to the Milwaukee Catholic Cemetery Perpetual Care Trust. The Amended Complaint also uses the term "Original Trust" to refer to a purported trust Archbishop Listecki contends existed prior to the formation of the Cemetery Trust to hold *unrestricted* funds that ADOM had designated to be used for the future care of its cemeteries and mausoleums and uses the term "Trust" to refer to both the alleged Original Trust and the Juridic Trust. In order to avoid additional confusion, the Committee will use the term Trust and Original Trust as they are defined in the Amended Complaint. However, the Committee's use of these terms is not intended to, and shall not constitute, an admission or acknowledgment that either the Original Trust or the Cemetery Trust are valid or enforceable or that either alleged trust is an ecclesiastical or Cannon law based juridic entity.

Case 11-02459-svk   Doc 50   Filed 04/11/12   Page 3 of 71

Cemetery Perpetual Care Trust ("Cemetery Trust"). Except as so admitted, the Committee denies the remaining allegations contained in paragraph 6 of the Amended Complaint.

7.　　　The Committee denies the allegations contained in paragraph 7 of the Amended Complaint.

8.　　　The Committee admits the allegations contained in paragraph 8 of the Amended Complaint.

9.　　　In response the allegations in paragraph 9 of the Amended Complaint, the Committee admits that the Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157(b)(1) and 1334. Except as so admitted, the Committee denies the remaining allegations of paragraph 9 of the Amended Complaint.

10.　　The Committee admits the allegations contained in paragraph 10 of the Amended Complaint.

11.　　The Committee denies that Count III of the Amended Complaint asserting violation of the Religious Freedom and Restoration Act, 42 U.S.C. §2000bb-1(b), and the First Amendment of the United States Constitution is a core matter. The Committee admits that Counts I, II, IV, and V are core.

12.　　The Committee admits the allegations contained in paragraph 12 of the Amended Complaint.

13.　　In response to the allegations in paragraph 13 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 13 of the Amended Complaint, and therefore denies those allegations.

14. In response to the allegations in paragraph 14 of the Amended Complaint, the Committee admits that ADOM owns, operates and is obligated to maintain a number of cemeteries and/or mausoleums. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14 of the Amended Complaint, and therefore denies those allegations.

15. The Committee denies the allegations contained in paragraph 15 of the Amended Complaint.

16. The Committee denies the allegations contained in paragraph 16 of the Amended Complaint.

17. In response to the allegations in paragraph 17 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Amended Complaint, and therefore denies those allegations.

18. In response to the allegations in paragraph 18 of the Amended Complaint, the Committee admits that ADOM is obligated to maintain and care for the cemeteries and mausoleums that it owns and that these obligations are not conditioned on the receipt of funds from third parties. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Amended Complaint, and therefore denies those allegations.

19.     The Committee denies the allegations contained in paragraph 19 of the Amended Complaint.

20.     In response to the allegations in paragraph 20 of the Amended Complaint, the Committee admits that the Cemetery Trust Agreement speaks for itself. The Committee denies the remaining allegations contained in paragraph 20 of the Amended Complaint.

21.     In response to the allegations in paragraph 21 of the Amended Complaint, the Committee admits that ADOM receives distributions from the Cemetery Trust. The Committee denies the remaining allegations contained in paragraph 21 of the Amended Complaint.

22.     In response to the allegations in paragraph 22 of the Amended Complaint, the Committee admits that it contends the assets of the Cemetery Trust are property of ADOM's estate and that it intends to enforce the estate's rights with respect to these assets.

23.     The Committee denies the allegations contained in paragraph 23 of the Amended Complaint.

24.     The Committee denies the allegations contained in paragraph 24 of the Amended Complaint.

25.     The Committee denies the allegations contained in paragraph 25 of the Amended Complaint.

26. In response to the allegations contained in paragraph 26 of the Amended Complaint, the Committee admits that 11 U.S.C. §541(a) speaks for itself. The Committee denies the remaining allegations contained in paragraph 26 of the Amended Complaint.

27. The Committee denies the allegations contained in paragraph 27 of the Amended Complaint.

28. The Committee denies the allegations contained in paragraph 28 of the Amended Complaint.

29. The Committee denies the allegations contained in paragraph 29 of the Amended Complaint.

30. In response to the allegations contained in paragraph 30 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

31. In response to the allegations contained in paragraph 31 of the Amended Complaint, the Committee admits that the Cemetery Trust Agreement indicates it was executed by Archbishop Dolan on April 2, 2007, that the Cemetery Trust was created by ADOM, and that ADOM subsequently funded the Cemetery Trust in 2008 by transferring its *unrestricted* funds to the Cemetery Trust. The Committee denies the remaining allegations of paragraph 31 of the Amended Complaint.

32. The Committee denies the allegations contained in paragraph 32 of the Amended Complaint.

33.     The Committee denies the allegations contained in paragraph 33 of the Amended Complaint.

34.     The Committee denies the allegations contained in paragraph 34 of the Amended Complaint.

35.     In response to the allegations contained in paragraph 35 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

36.     In response to the allegations contained in paragraph 36 of the Amended Complaint, the Committee admits that "Wisconsin Statutes" speak for themselves. The Committee denies the remaining allegations contained in paragraph 36 of the Amended Complaint.

37.     The Committee denies the allegations contained in paragraph 37 of the Amended Complaint.

38.     In response to the allegations contained in paragraph 38 of the Amended Complaint, the Committee admits that ADOM is required to maintain its cemeteries and mausoleums. The Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 38 of the Amended Complaint, and therefore denies those allegations.

39.     In response to the allegations contained in paragraph 39 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 39 of the Amended Complaint, and therefore denies those allegations.

40.     In response to the allegations contained in paragraph 40 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 40 of the Amended Complaint, and therefore denies those allegations.

41.     The Committee denies the allegations contained in paragraph 41 of the Amended Complaint.

42.     The Committee denies the allegations contained in paragraph 42 of the Amended Complaint.

43.     The Committee denies the allegations contained in paragraph 43 of the Amended Complaint.

44.     The Committee denies the allegations contained in paragraph 44 of the Amended Complaint.

45.     In response to the allegations contained in paragraph 45 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

46.     In response to the allegations contained in paragraph 46 of the Amended Complaint, the Committee admits that "Wisconsin Statutes" speak for themselves. The Committee denies the remaining allegations contained in paragraph 46 of the Amended Complaint.

47. The Committee denies the allegations contained in paragraph 47 of the Amended Complaint.

48. In response to the allegations contained in paragraph 48 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48 of the Amended Complaint, and therefore denies those allegations.

49. The Committee denies the allegations contained in paragraph 49 of the Amended Complaint.

50. The Committee denies the allegations contained in paragraph 50 of the Amended Complaint.

51. The Committee denies the allegations contained in paragraph 51 of the Amended Complaint.

52. The Committee denies the allegations contained in paragraph 52 of the Amended Complaint.

53. In response to the allegations contained in paragraph 53 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-29 of the Amended Complaint.

54. In response to the allegations contained in paragraph 54 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee denies the allegations contained in paragraph 54 of the Amended Complaint.

55.     The Committee denies the allegations contained in paragraph 55 of the Amended Complaint.

56.     The Committee denies the allegations contained in paragraph 56 of the Amended Complaint.

57.     The Committee denies the allegations contained in paragraph 57 of the Amended Complaint.

58.     The Committee denies the allegations contained in paragraph 58 of the Amended Complaint.

59.     In response to the allegations contained in paragraph 59 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-58 of the Amended Complaint.

60.     The Committee denies the allegations contained in paragraph 60 of the Amended Complaint.

61.     In response to the allegations contained in paragraph 61, the Committee admits that all funds in the Cemetery Trust were contributed by ADOM and that the funds are used for ADOM's sole benefit. The Committee denies the remaining allegations contained in paragraph 61 of the Amended Complaint.

62.     The Committee denies the allegations contained in paragraph 62 of the Amended Complaint.

63.     The Committee denies the allegations contained in paragraph 63 of the Amended Complaint.

64.     The Committee denies the allegations contained in paragraph 64 of the Amended Complaint.

65.     In response to the allegations contained in paragraph 65 of the Amended Complaint, the Committee admits that all funds in the Cemetery Trust were contributed by ADOM and that the funds are used for ADOM's sole benefit. The Committee denies the remaining allegations contained in paragraph 65 of the Amended Complaint.

66.     In response to the allegations contained in paragraph 66 of the Amended Complaint , the Committee admits that the language of the Cemetery Trust Agreement speaks for itself. The Committee denies the remaining allegations contained in paragraph 66 of the Amended Complaint.

67.     The Committee denies the allegations contained in paragraph 67 of the Amended Complaint.

68.     The Committee denies the allegations contained in paragraph 68 of the Amended Complaint.

69.     The Committee denies the allegations contained in paragraph 69 of the Amended Complaint.

70.     The Committee denies the allegations contained in paragraph 70 of the Amended Complaint.

71.     In response to the allegations contained in paragraph 71 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-70 of the Amended Complaint.

72.     The Committee denies the allegations contained in paragraph 72 of the Amended Complaint.

73.     In response to the allegations contained in paragraph 73 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee denies the allegations contained in paragraph 73 of the Amended Complaint.

74.     In response to the allegations contained in paragraph 74 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee admits that RFRA speaks for itself. The Committee denies the remaining allegations contained in paragraph 74 of the Amended Complaint.

75.     The Committee denies the allegations contained in paragraph 75 of the Amended Complaint.

76.     The Committee denies the allegations contained in paragraph 76 of the Amended Complaint.

77.     In response to the allegations contained in paragraph 77 of the Amended Complaint, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77 of the Amended Complaint, and therefore denies those allegations.

78.     In response to the allegations contained in paragraph 78 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and

require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78 of the Amended Complaint, and therefore denies those allegations.

79. In response to the allegations contained in paragraph 79 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Amended Complaint, and therefore denies those allegations.

80. In response to the allegations contained in paragraph 80 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Amended Complaint, and therefore denies those allegations.

81. In response to the allegations contained in paragraph 81 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the Amended Complaint, and therefore denies those allegations.

82. In response to the allegations contained in paragraph 82 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge

or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Amended Complaint, and therefore denies those allegations.

83. The Committee denies the allegations contained in paragraph 83 of the Amended Complaint.

84. In response to the allegations contained in paragraph 84 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of the Amended Complaint, and therefore denies those allegations.

85. In response to the allegations contained in paragraph 85 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Amended Complaint, and therefore denies those allegations.

86. The Committee denies the allegations contained in paragraph 86 of the Amended Complaint.

87. The Committee denies the allegations contained in paragraph 87 of the Amended Complaint.

88. In response to the allegations contained in paragraph 88 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-58 of the Amended Complaint.

89. The Committee denies the allegations contained in paragraph 89 of the Amended Complaint.

90. In response to the allegations contained in paragraph 90 of the Amended Complaint, the Committee contends that these allegations are legal conclusions and require no response. To the extent any response is required, the Committee denies that ADOM holds only legal title to the assets in the Cemetery Trust.

91. The Committee denies the allegations contained in paragraph 91 of the Amended Complaint.

92. In response to the allegations contained in paragraph 92 of the Amended Complaint, the Committee incorporates by reference its responses to the allegations contained in paragraphs 1-58 of the Amended Complaint.

93. The Committee denies the allegations contained in paragraph 93 of the Amended Complaint.

94. The Committee denies the allegations contained in paragraph 94 of the Amended Complaint.

95. The Committee denies the allegations contained in paragraph 95 of the Amended Complaint.

96. The Committee denies the allegations contained in paragraph 96 of the Amended Complaint.

97. The Committee denies the allegations contained in paragraph 97 of the Amended Complaint.

98.     The Committee denies the allegations contained in paragraph 98 of the Amended Complaint.

99.     The Committee denies the allegations contained in paragraph 99 of the Amended Complaint.

100.    The Committee denies the allegations contained in paragraph 100 of the Amended Complaint.

101.    The Committee denies the allegations contained in paragraph 101 of the Amended Complaint.

102.    The Committee denies the allegations contained in paragraph 102 of the Amended Complaint.

103.    The Committee denies the allegations contained in paragraph 103 of the Amended Complaint.

104.    The Committee denies the allegations contained in paragraph 104 of the Amended Complaint.

105.    The Committee denies the allegations contained in paragraph 105 of the Amended Complaint.

106.    The Committee denies the allegations contained in paragraph 106 of the Amended Complaint.

107.    The Committee denies the allegations contained in paragraph 107 of the Amended Complaint.

108.    The Committee denies the allegations contained in paragraph 108 of the Amended Complaint.

109.    The Committee denies the allegations contained in paragraph 109 of the Amended Complaint.

110.    The Committee generally and specifically denies each of the requests for relief under the heading of the Amended Complaint reading, "Relief Requested."

**AFFIRMATIVE DEFENSES**

The Committee asserts the following affirmative defenses without assuming the burden of proof when the burden of proof would otherwise be on Archbishop Listecki when applicable law places the burden of proof on the party asserting a trust and/or a right to alleged trust assets.

1.    <u>Failure to join a party</u> (Federal Rule of Bankruptcy Procedure 7019): The Cemetery Trust[2] has failed to name ADOM as a party to this adversary proceeding.

2.    <u>Real party in interest</u>: ADOM not the Committee, is a real party in interest in this adversary proceeding. The *Second Order Conferring Standing* provides that the Committee may defend against allegations in the Amended Complaint on behalf of the estate.

3.    <u>The Original Trust is an invalid and unenforceable self-settled trust</u>: If the Original Trust is found to exist, it was invalid and unenforceable against ADOM's creditors because ADOM was both the settlor and a beneficiary of the Original Trust.

---

[2] See footnote 1 to the Committee's First Amended Answer to the Amended Complaint, above, which is incorporated here by reference.

4. <u>The Original Trust is an invalid and unenforceable beneficiary-controlled trust</u>: If the Original Trust is found to exist, it was invalid and unenforceable against ADOM's creditors because it was controlled by ADOM, which was also a beneficiary of the alleged Original Trust.

5. <u>The Cemetery Trust is an invalid and unenforceable self-settled spendthrift trust</u>: ADOM is both the trustor/settlor and beneficiary of the Cemetery Trust. The Cemetery Trust contains express "spendthrift" provisions purporting to restrict ADOM, as the beneficiary of the Cemetery Trust, from alienating any of its interests in the Cemetery Trust. The Cemetery Trust is therefore a self-settled spendthrift trust in which the settlor is the beneficiary. Under Wisconsin law, self-settled trusts, including, self-settled spendthrift trusts, in which the settlor is also the beneficiary, are invalid and unenforceable against the interests of creditors.

6. <u>Cemetery Trust is an invalid and unenforceable beneficiary-controlled spendthrift trust</u>: ADOM is both the trustor/settlor and a beneficiary of the Cemetery Trust. The Cemetery Trust contains express "spendthrift" provisions purporting to restrict the right of ADOM, as the beneficiary of the Cemetery Trust, from alienating any of its interests in the Cemetery Trust. Archbishop Listecki is the President of ADOM, its sole Corporate Member and a director. Archbishop Listecki is also the sole trustee of the Cemetery Trust. The provisions of the Cemetery Trust Agreement require that the Archbishop of Milwaukee be the trustee of the Cemetery Trust. ADOM as a beneficiary of the Cemetery Trust, through Archbishop Listecki, controls the Cemetery Trust in his capacity as trustee of the Cemetery

Trust. The Cemetery Trust is therefore invalid and unenforceable against the interests of creditors.

7.  Doctrine of merger (Original Trust): Under the doctrine of merger, a valid trust cannot exist where the same entity holds the legal and beneficial interests in alleged trust assets. Here, ADOM and the Original Trust (if it is found to exist) constituted a single entity which was controlled by the same individual(s). The Original Trust, to the extent it existed at all, was an alter ego of ADOM. The assets of the Original Trust were held and used for the benefit of ADOM to fulfill its corporate purpose, including, satisfying its preexisting obligations to maintain its cemeteries and mausoleums. The Committee is informed and believes that ADOM could and/or did use the funds in the alleged Original Trust for purposes that did not relate to the maintenance of its cemeteries and mausoleums. At all times, ADOM held all of the legal and beneficial interests in the assets of the alleged Original Trust.

8.  Doctrine of merger (Cemetery Trust): Under the doctrine of merger, a valid trust cannot exist where the same entity holds the legal and beneficial interests in alleged trust assets. Here, ADOM and the Cemetery Trust constitute a single entity which is controlled by the same individual(s). The Cemetery Trust is an alter ego of ADOM. The assets of the Cemetery Trust are controlled by ADOM and are held and used for the benefit of ADOM to fulfill its corporate purpose, including, satisfying its preexisting obligations to maintain its cemeteries and mausoleums. The Committee is informed and believes that ADOM could and/or did use the assets in the Cemetery Trust for purposes that did not relate

to the maintenance of its cemeteries and mausoleums. ADOM holds all of the legal and beneficial interests in the assets of the Cemetery Trust.

9.    Neither the Original Trust nor the Cemetery Trust are valid enforceable trusts: Neither the alleged Original Trust nor the Cemetery Trust are valid or enforceable because the persons who purchased cemetery services and/or rights from ADOM, did not understand or intend that their funds would be held in trust by ADOM and/or ADOM did not intend to hold the funds in trust.

10.    Cemetery Trust is invalid and unenforceable because it was created for an improper and/or fraudulent purpose: ADOM created and funded the Cemetery Trust in an effort to place its previously **unrestricted** assets out of the reach of its creditors, including the survivors of clergy sex abuse.

11.    ADOM has acknowledged the alleged trust res cannot be traced by classifying the funds as "**unrestricted**" prior to the time they were transferred to the Cemetery Trust: Even if the Original Trust and/or the Cemetery Trust are valid enforceable trusts, the assets in the Cemetery Trust constitute property of ADOM's chapter 11 estate because the trust res cannot be traced under applicable bankruptcy law which requires application of the Lowest Intermediate Balance test to trace alleged trust funds after they have been commingled with non-trust funds. Long prior to transferring its funds in excess of $55 million to the Cemetery Trust, ADOM acknowledged that these funds were not the same funds that are alleged to have been contributed by the purchasers of burial or other cemetery rights and services from ADOM for the future care of the cemeteries and mausoleums by classifying

these funds as "**unrestricted**" in the notes to its audited financial statements. An "**unrestricted**" classification means that the funds at issue were not subject to any restrictions on their use or purpose by those who contributed the funds to ADOM, including the purchasers of burial or other cemetery rights and services from ADOM. ADOM's classification of these funds as "**unrestricted**" precludes either Archbishop Listecki or ADOM from now contending that these funds are the same funds received from the purchasers of burial or other cemetery rights and services from ADOM which the parties intended to be held in trust for cemetery care or any other specified restricted purpose.

        12.     The alleged trust res cannot be traced: The mere fact that the trust funds are alleged to be held in a designated fund or segregated account at the date the petition is filed is not sufficient to establish that those funds are trust funds where, as here, the funds were classified by ADOM as "**unrestricted**" and/or had been commingled with ADOM's non-trust funds prior to being transferred to any fund or segregated account and neither ADOM nor Archbishop Listecki can prove that the alleged trust funds were transferred from the commingled accounts under the Lowest Intermediate Balance Test. All of the alleged trust funds held by the Cemetery Trust were previously commingled with non-trust funds in one or more of ADOM's bank accounts before those funds were eventually transferred to the Cemetery Trust, and it cannot be established that the alleged trust funds, rather than ADOM's non-trust funds, were transferred from the commingled accounts into the Cemetery Trust's account. Thus, the initial transfer of approximately $55 million into the Cemetery Trust in March 2008 contained property of the estate, not identifiable trust funds.

13. <u>Alter ego</u>: The Cemetery Trust is the alter ego of ADOM such that the Cemetery Trust and ADOM are a single entity due to ADOM's domination and control over the Cemetery Trust, including, but not limited to, the fact that the sole Corporate Member and President of ADOM is the sole Trustee of the Trust. It would be unfair and inequitable to treat ADOM and the Cemetery Trust as separate entities because this would allow ADOM to transfer more than $55 million to a controlled entity for the purpose of placing the funds beyond the reach of sex abuse survivors and other creditors of ADOM.

14. <u>Substantive consolidation</u>: Assuming the Cemetery Trust is determined to be valid and enforceable, the Cemetery Trust is a mere instrumentality of ADOM with no separate existence apart from ADOM. Substantive consolidation of the Cemetery Trust with ADOM will allow a truly equitable distribution of assets among ADOM's creditors by recognizing the reality that ADOM and the Cemetery Trust are a single economic unit.

15. <u>Unclean Hands</u>: Archbishop Listecki's claims are barred, in whole or in part, by the doctrine of unclean hands.

16. <u>Lack of Standing</u>: Archbishop Listecki, in his capacity as trustee of the Cemetery Trust, lacks standing to bring claims based on the free exercise clause of the First Amendment to the United States Constitution and/or the Religious Freedom and Restoration Act ("<u>RFRA</u>").

17. <u>Federal bankruptcy laws are neutral, generally applicable laws, which are valid under the Religion Clauses of the First Amendment</u>: The Bankruptcy Code, and particularly sections 541, 542, 544, 547, 548 and 550 were not enacted to target and do not

target religiously motivated transfers of funds. The provisions are neutral and must be applicable whether or not ADOM and/or Archbishop Listecki acted with a religious motivation and whether or not the transferee is a religious institution. These provisions are intended to ensure fair and equitable treatment in the bankruptcy process, and to protect creditors from the unfair depletion of the estate.

18.     Due process requires that ADOM's estate not be deprived of substantial liquid interests that ADOM has fraudulently attempted to placed out of the reach of its creditors: The Cemetery Trust was created for an improper or fraudulent purpose in an effort to place its previously unrestricted assets out of the reach of creditors. The Bankruptcy Code, including sections 541, 542, 544, 547, 548 and 550, is intended to ensure fair dealing and to protect all creditors who are owed interests from debtors who voluntarily file for Chapter 11 bankruptcy. To allow ADOM and/or Archbishop Listecki to deprive the estate of these interests in a sham trust would substantially deprive the estate and its creditors of their rightful property in violation of the Due Process Clause of the Fifth Amendment.

19.     The Bankruptcy Code, including sections 541, 542, 544, 547, 548 and 550, do not impose a substantial burden on ADOM or Archbishop Listecki under the federal Free Exercise Clause, the Wisconsin Constitution, Article I Section 18: "Freedom of worship; liberty of conscience; state religion; public funds," or RFRA): To maintain an action under constitutional free exercise provisions or RFRA, the initial burden rests on the actor claiming protection, (ADOM and/or Archbishop Listecki) to establish that the law imposes a substantial burden on religious exercise. The Bankruptcy Code does not impose a substantial

burden on the free exercise of religion. The Bankruptcy Code, including sections 541, 542, 544, 547, 548 and 550 do not bear "direct, primary responsibility for rendering religious exercise 'effectively impracticable.'" Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003).

      20.    The application of RFRA to state law is unconstitutional: To the extent that Committee asserts the Original Trust (if it is found to exist) and the Cemetery Trust is void under Wisconsin law and/or that the transfer of ADOM's assets to the Cemetery Trust is avoidable under Wisconsin law, RFRA is inapplicable and unconstitutional. The United States Supreme Court, in City of Boerne v. Flores, 521 U.S. 507 (1997), found that RFRA's application to state law was a violation of the Constitution's inherent limits of federalism and beyond the power of Congress.

      21.    RFRA as applied to federal law is unconstitutional: The United States Supreme Court, in City of Boerne, 521 U.S. at 536, held that RFRA was unconstitutional because RFRA legislatively "alters the meaning of the Free Exercise Clause" and "contradicts vital principles necessary to maintain separation of powers." Here, the application of RFRA as to federal law is unconstitutional.

      22.    RFRA is not applicable when the government is not a party to the suit: By its plain language, RFRA is only applicable when the government is a party to the action in which a RFRA claim is asserted. No governmental entity is a party to this adversary proceeding.

23.    If ADOM were able to show the Bankruptcy Code imposed a
substantial burden on religious exercise, the federal government has a compelling interest in
the enforcing the Bankruptcy Code: Therefore, ADOM/Bishop Listecki cannot establish a
free exercise of religion claim. The Bankruptcy Code and in particular, sections 541, 542,
544, 547, 548 and 550 do not substantially burden the exercise of religion, and even if it did,
the provisions further a compelling governmental interest and are sufficiently narrow to
survive a free exercise challenge under Wisconsin constitutional law or RFRA. The
Bankruptcy Code is designed to advance a compelling government interest, specifically to
give the debtor a financial reprieve, which is paired with a compelling interest in treating
creditors fairly and equitably. There is a further compelling interest in the efficient
administration of the bankruptcy system and the historical importance of recovering
fraudulent and preferential transfers in bankruptcy law and voiding self-settled trusts where
the settler is a beneficiary. The Bankruptcy Code, and in particular, sections 541, 542, 544,
547, 548 and 550, serve a compelling interest in preventing transfers motivated by fraud or
other improper purpose or to prefer certain creditors. It would be a manifest injustice to
provide debtors the power to avoid their full obligations to creditors and to be able to hide
assets fairly owed to creditors.

24.    Establishment Clause: The Bankruptcy Code, including Sections 541,
542, 544, 547, 548 and 550 and are general, non-discriminatory provisions governing conduct
by ADOM, regardless of its beliefs. To give ADOM a right to avail itself of the benefits
Bankruptcy Code but evade the burdens, which right is not available to comparable secular

organizations is a violation of the Establishment Clause. See Roemer v. Board of Public Works of Maryland, 426 U.S. 736, 747 (1976) (stating, "[n]eutrality is what is required. The State must confine itself to secular objectives, and neither advance nor impede religious activity"). Any decrease in the amount of money that ADOM is able to spend on religious activities because of the imposition of the lawful avoidance procedures is an incidental, constitutionally permissible burden arising from the fair administration of a voluntary bankruptcy for all involved.

25.     RFRA/First Amendment Claims are Premature:  The RFRA and First Amendment Claims raised by Archbishop Listecki are not properly the subject of this adversary proceeding because even if the assets in the Cemetery Trust are determined to be property of the estate, such determination, subject to the Bankruptcy Code, will not prevent ADOM from using its assets to provide reasonable maintenance and care to its cemeteries and mausoleums. Limitations of any magnitude on the use of ADOM's assets to provide cemetery and mausoleum maintenance will be determined in the context of plan confirmation and not in this adversary proceeding.

26.     Reservation:  The Committee reserves the right to assert any other defenses based on facts obtained through discovery in this adversary proceeding.

## COUNTERCLAIMS

The Official Committee of Unsecured Creditors in the above-captioned bankruptcy case (the "Committee") counterclaims as follows:

## Introduction

1. On January 13, 2012, Archbishop Jerome E. Listecki, the Archbishop of the Archdiocese of Milwaukee ("Archbishop Listecki"), in his capacity as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust ("Cemetery Trust") filed his *Amended Complaint* (the "Amended Complaint"), seeking declaratory relief that neither the Cemetery Trust nor the assets in the Cemetery Trust are property of the Archdiocese of Milwaukee's (the "Debtor" or "ADOM") chapter 11 estate. The Committee is the only defendant named in this adversary proceeding. Archbishop Listecki did not name ADOM as a defendant even though ADOM is the real party in interest in this adversary proceeding. The Committee believes this is because ADOM controls the Cemetery Trust and ADOM and Archbishop Listecki have a stark and irreconcilable conflict with respect to the Cemetery Trust and the claims Archbishop Listecki has asserted in the Amended Complaint.

2. On the one hand, ADOM and Archbishop Listecki, who is the sole Corporate Member and President of ADOM and the Archbishop of the Archdiocese of Milwaukee, have fiduciary obligations to ADOM's creditors, including the survivors of sex abuse, to maximize the assets in the chapter 11 estate. However, in an effort to shield its assets from its creditors, including the survivors of sex abuse, while still maintaining complete control over the assets, ADOM, through Archbishop Listecki's predecessor, Archbishop Timothy M. Dolan ("Archbishop Dolan") created and funded the Cemetery Trust with ADOM's ***unrestricted*** assets and made the Archbishop the sole trustee of the trust with the authority to distribute both the corpus and the income of the Cemetery Trust to ADOM in his

discretion. ADOM is both the entity that created and funded the Cemetery Trust (the trustor or settlor) and the beneficiary of the Cemetery Trust because the assets of the Cemetery Trust are used solely to fulfill ADOM's corporate purpose, programs and administration, including satisfying its preexisting obligations to maintain its cemeteries and mausoleums, and all distributions from the Cemetery Trust (save those used for administering the trust) are either paid directly to ADOM or for its benefit.

3.     Notwithstanding his fiduciary duty to creditors as the sole Corporate Member, President and a Director of ADOM, Archbishop Listecki, as trustee of the Cemetery Trust, has initiated this litigation against the Committee seeking to remove approximately $55 million of ADOM's financial assets from its chapter 11 estate.

4.     At the time the Cemetery Trust was created as part of an asset protection scheme to shield ADOM's assets from its creditors in 2007, Archbishop Dolan was sitting on both sides of the table. While sitting on one side of the table, he executed the trust agreement establishing the Cemetery Trust as the President of ADOM which was the trustor/settlor of the Cemetery Trust. Simultaneously, while sitting on the other side of the table, he executed the trust agreement in his capacity as the "Archbishop of Milwaukee" as the sole "Trustee" of the Cemetery Trust. To fully enable ADOM's asset protection scheme, Archbishop Dolan also executed the 2007 Consent Resolution of ADOM's directors authorizing ADOM to transfer in excess of $55 million of ADOM's *unrestricted* assets to the Cemetery Trust.

5.     Archbishop Listecki has chosen to enforce ADOM's asset protection scheme rather than to fulfill his fiduciary obligations to the survivors of childhood sex abuse and ADOM's other creditors.

6.     Had ADOM been named as a defendant in this adversary proceeding, Archbishop Listecki would control both sides of the litigation. The Archbishop's control over both ADOM and the Cemetery Trust, and his primary objective of shielding ADOM's $55 million from the claims of the sex abuse survivors rather than maximizing assets of the ADOM's chapter 11 estate are readily apparent.

7.     The Committee is the only entity that can properly represent the interests of ADOM's bankruptcy estate and its creditors in this adversary proceeding. Pursuant to a stipulation between the Committee, ADOM, and the Cemetery Trust, the Court has granted the Committee standing to assert and litigate the Counterclaims, set forth herein (the "Counterclaims") on behalf of ADOM's estate.

8.     By its Counterclaims, the Committee, on behalf of ADOM's chapter 11 estate, seeks a determination that that the Cemetery Trust is not valid or enforceable and/or that the funds in the Cemetery Trust constitute property of ADOM's bankruptcy estate. In the event that the Cemetery Trust is found to be enforceable, the Committee seeks to avoid and recover as fraudulent and preferential transfers to the Cemetery Trust more than $55 million.

9.     Archbishop Listecki alleges in the Amended Complaint that ADOM created an entity referred to as the "Original Trust" and the alleged trust res of the Original Trust was created when ADOM transferred its own funds into a bank account in ADOM's

name which was not a designated trust account. According to the Amended Complaint, the creation and funding of the Cemetery Trust was merely to "formalize" the existence of the Original Trust.

10.    However, Archbishop Listecki admits, in the Amended Complaint, that ADOM has operated and maintained its cemeteries since 1857 and has always been obligated to care for and maintain its cemeteries irrespective of whether it has received payments from purchasers of burial rights or other cemetery rights or services for that purpose and that the purpose of the Original Trust was to satisfy ADOM's corporate purpose, programs and administration, including its preexisting obligations to maintain its cemeteries.

11.    Therefore, the admissions in the Amended Complaint establish that the Original Trust (if it existed at all) and the Cemetery Trust were both self-settled by ADOM and that ADOM was a beneficiary (if not the sole beneficiary) of the trusts. As self-settled trusts in which ADOM, as the settlor is also a beneficiary, both the Original Trust (to the extent it ever existed) and the Cemetery Trust, are subject to all remedies, claims and infirmities that such disfavored trusts are subject to and as set forth more specifically herein. Critically, under Wisconsin law, such trusts are void against the interests of creditors.

12.    The Committee also contends that the transfers of funds to the Cemetery Trust constitute fraudulent and preferential transfers of ADOM's assets. In March 2008, ADOM initially funded the Cemetery Trust with a transfer of over $55 million of *unrestricted* funds from its own account into the Cemetery Trust. In addition, the Committee is informed and believes that additional funds have been transferred from ADOM's accounts

into the Cemetery Trust after that initial $55 million transfer, and that those transfers should also be avoided and recovered for the benefit of the estate.

13.　　The resolution of this litigation is critical to ADOM's chapter 11 estate because it will determine whether there can be distributions of any magnitude to its creditors, including the survivors of the childhood sex abuse enabled by ADOM or whether ADOM can continue to avoid being held accountable.

## Jurisdiction

14.　　This Court has jurisdiction over the instant adversary proceeding, including the Counterclaims, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334; 11 U.S.C. § 105; and Federal Rules of Bankruptcy Procedure 7001 and 7013.

15.　　Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1409.

16.　　This adversary proceeding constitutes both a core and non-core proceeding. The Counterclaims constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2). Counts I, II, IV, and IV of the Amended Complaint constitute core proceedings. Count III of the Amended Complaint alleging violation of RFRA and the First Amendment of the United States Constitution and the affirmative defenses to the RFRA and First Amendment claims are non-core proceedings.

17.     On or about January 24, 2011, the United States Trustee appointed Defendant/Counterclaimant, the Committee, to represent ADOM's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).

18.     The Committee has standing to bring the Counterclaims pursuant to the *Second Order Approving Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Claims Related to the Adversary Complaint, and Litigate and Propose or Accept a Settlement of the Adversary Proceeding, or Part Thereof*, entered February 2, 2012 [Docket No. 39].

19.     Plaintiff/Counterdefendant, Archbishop Listecki, as trustee of the Cemetery Trust, allegedly created on or about April 2, 2007, pursuant to the Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust ("Cemetery Trust Agreement"), is sued in his capacity as the sole trustee of the Cemetery Trust.

## Background

**A.     ADOM has preexisting obligations to maintain and care for its cemeteries and doing so is a core part of its corporate purpose, programs and administration.**

20.     ADOM is, and at all relevant times has been, obligated, as the owner of the cemeteries and mausoleums, to care for and maintain them. This obligation exists whether or not it has received payments from purchasers of cemetery rights and services for this purpose and whether or not funds have been specifically identified for this purpose.

21.     ADOM operates and maintains its cemeteries in furtherance of its corporate purpose, programs and administration.

**B.** **Prior to the transfer of its funds to the Cemetery Trust, the funds ADOM had designated for cemetery care and maintenance were classified by ADOM as "unrestricted" which meant they were not subject to donor restrictions of any kind and that the funds were subject to the claims of ADOM's general creditors.**

22. Effective after December 15, 1994, new accounting standards became effective for not-for profit entities such as ADOM. In particular, Statement of Financial Accounting Standards No. 117, titled "Financial Statements of Not-for-Profit Organizations" ("SFAS 117") establishing standards for financial statements provided by not-for-profit organizations became effective on this date. Among other things, SFAS 117 requires a not-for-profit organization like ADOM to classify its net assets as either "restricted" to reflect donor-imposed restrictions or "unrestricted" to reflect that the funds are not subject to any donor imposed restrictions.

23. Paragraph 16 of SFAS 117 provides:

> Unrestricted net assets generally result from revenues from providing services, producing and delivering goods, receiving unrestricted contributions and receiving dividends or interest from investing in income-producing assets. . . . The only limits on the use of unrestricted net assets are the broad limits resulting from the nature of the organization, the environment in which it operates, and the purposes specified in its articles of incorporation or bylaws and limits resulting from contractual agreements, suppliers, creditors, and others entered into by the organization in the course of its business. Information about those contractual limits that are significant, including the existence of loan covenants, generally is provided in the notes to the financial statements. Similarly, information about self-imposed limits, that may be useful, including information about voluntary resolutions by the governing board of an organization to designate a portion of its unrestricted net assets to function as an endowment (sometimes called a *board-designated endowment*), may be provided in notes to or on the face of the financial statements.

24.     Under applicable law and accounting standards and principles, only "restricted" net assets of ADOM may be subject to enforceable legal restrictions that may protect them from creditor claims. "Unrestricted" net assets, whether or not they are "board designated" are subject to the claims of general creditor claims.

25.     Statement of Financial Accounting Concepts No. 6 titled "Elements of Financial Statements provides at paragraph 97:

> Only donors' explicit, or clearly evident implicit, stipulations that limit a not-for-profit organization's use of its assets can result in permanently or temporarily restricted net assets (as this Statement uses those terms). Decisions, resolutions, appropriations, or the like by the directors, trustees, or managers of a not-for profit organization may impose seemingly similar limits on the use of net assets that were not stipulated by donors. However, unless the limits are imposed by donors' stipulations that place them beyond the organizations' discretion to change, they differ substantively from donor imposed limits that result in restricted net assets. For example a voluntary resolution by the trustees of an organization to earmark a portion of its unrestricted net assets to function as an endowment is a revocable internal designation that does not give rise to restricted net assets. Only in the relatively few instances in which self-imposed limits become legally irrevocable are they substantively equivalent to donor-imposed restrictions and the cause of restricted net assets.

26.     From and after the time that SFAS 117 became effective, until the time that ADOM transferred in excess of $55 million to the Cemetery Trust in March 2008, the notes to ADOM's audited financial statements characterized as "***Unrestricted Net Assets***" the funds designated for the future care of ADOM's cemeteries and mausoleums and referred to in the Amended Complaint as the Perpetual Care Funds and/or the Original Trust Funds.

27.     The notes to ADOM's audited financial statements indicate that these *unrestricted* funds were "Board Designated" for the future care of ADOM's cemeteries and mausoleums.

28.     There is no indication in ADOM's audited financial statements or the notes thereto, that these *unrestricted* funds were subject to any contractual limitation with third parties.

29.     These "*unrestricted*" funds were not subject to donor restrictions and were available to satisfy the claim of ADOM's general creditors. This is true even where, as here, the "*unrestricted*" funds have been designated by ADOM for a particular purpose because the funds were not subject to donor restrictions or any contractual limitation with third parties and ADOM was free to remove its "Board Designation."

30.     It is these "*unrestricted*" ADOM funds which were available to satisfy the claims of its creditors that Archbishop Listecki contends were used to make the initial transfer in excess of $55 million to the Cemetery Trust. ADOM's own financial statements belie Archbishop Listecki's contention that the transferred funds were ever held in trust or limited in use by third parties.

## C.     The Creation, Funding and Material Provisions of the Cemetery Trust

31.     Beginning in 2005, multiple sex abuse survivors sued ADOM in Wisconsin state court seeking damages for the sexual abuse of children enabled by ADOM.[3]

---

[3] Upon information and belief, other sex abuse survivors had filed state court lawsuits against ADOM as early as 2002 but those cases are no longer pending.

32.     ADOM vigorously defended itself and its assets in these cases (the "Sex Abuse Cases") by among other things, seeking to avoid accountability for its role in the sex abuse of children by contending that the claims were time barred. Among other things, ADOM contended that even the deaf survivors of childhood sex abuse were time barred because they did not "speak up" soon enough.

33.     The Sex Abuse Cases are still pending but are stayed due to the filing of ADOM's bankruptcy petition.

34.     ADOM was also sued for its role in child sex abuse in California. In late 2006 ADOM paid more than $8 million to settle the California litigation.

35.     Less than three months later, then-Archbishop Dolan executed the Consent Resolution of Directors dated March 27, 2007 directing ADOM to make the initial transfer of in excess of $55 million of ADOM's *"unrestricted"* funds to the Cemetery Trust.

36.     Shortly thereafter, on April 2, 2007, then-Archbishop Dolan executed the Cemetery Trust Agreement on behalf of all parties.

37.     Archbishop Dolan, in his capacity as the President of ADOM, executed the Cemetery Trust Agreement as the trustor/settlor.

38.     Archbishop Dolan, on behalf of the Archbishop of Milwaukee, also executed the Cemetery Trust Agreement as the sole trustee of the Cemetery Trust.

39.     The Cemetery Trust Agreement states that the purpose of the Cemetery Trust is "for the exclusive benefit, in perpetuity, of the Cemeteries and Mausoleums" owned

by ADOM and with within the geographic boundaries of the Archdiocese. See Cemetery Trust Agreement, Sections 1.1.5 and 2.1 and First Recital to Cemetery Trust Agreement.

40.    The Cemetery Trust Agreement empowers Archbishop Listecki, as trustee of the Cemetery Trust to make distributions to ADOM of both principal and income from the Cemetery Trust at any time and in his sole discretion. Cemetery Trust Agreement, Section 2.1.

41.    Section 4 of the Cemetery Trust Agreement contains provisions purporting to restrict ADOM's right or ability to voluntarily or involuntarily alienate its rights and interests in the Cemetery Trust. These provisions are commonly referred to as "spendthrift" provisions.

42.    In July 2007, the Wisconsin Supreme Court ruled that the Sex Abuse Cases were not time-barred (contrary to ADOM's contentions). Therefore, the Sex Abuse Cases continued against ADOM and ADOM's assets, including the *"unrestricted"* funds the ADOM Board had designated for the future care of its cemeteries and mausoleums. These *"unrestricted"* funds were at risk in the event any of the sex abuse survivors obtained judgments against ADOM.

43.    In March 2008, while the Sex Abuse Cases against ADOM were proceeding toward trial, ADOM transferred over $55 million of its *"unrestricted"* funds (the "Initial $55 Million Transfer") to a Cemetery Trust account at U.S. Bank (the "Cemetery Trust Account").

44. The funds used to make the Initial $55 Million Transfer had been classified as "*unrestricted*" in both ADOM's audited financial statements and notes thereto and therefore were not subject to any donor imposed or third party restrictions. These funds were not previously held in trust and were subject to the claims of ADOM's general creditors at the time the Initial $55 Million Transfer was made.

45. Subsequent to the Initial $55 Million Transfer, ADOM's financial statements and notes thereto reflect that ADOM had a "*beneficial interest*" in the Cemetery Trust valued at the value of all assets in the Cemetery Trust and that payments from the Cemetery Trust are made to ADOM as reimbursement for costs incurred by ADOM for providing services for the purpose of care and maintenance of its cemeteries.

46. Subsequent to the Initial $55 Million Transfer, ADOM's financial statements and the notes thereto continued to classify the assets in the Cemetery Trust as *unrestricted* assets of ADOM.

D. **The money ADOM collected from the purchasers of burial and/or other cemetery rights and services were commingled with ADOM's general operating funds and cannot be traced.**

47. Based upon a review of ADOM's Great Plains general ledger accounting system ("Great Plains"), from at least fiscal year 2002 to fiscal year 2007, when a customer purchased burial or other rights from a cemetery owned by ADOM, these funds and/or a portion thereof ("Cemetery Sale Proceeds"), were deposited into a non-trust bank account owed by ADOM at Marshall & Ilsley Bank ("M&I Account") that also contained ADOM's operating and non-trust funds. Upon information and belief, the Cemetery Sale

Proceeds were commingled in the M&I Account with ADOM's operating and other non-trust funds.

48. The Committee is informed and believes that at all times prior to 2002, ADOM commingled Cemetery Sale Proceeds with its operating and other non-trust funds.

49. The Committee is informed and believes that prior to March 2008, ADOM would transfer its funds from the M&I Account to ADOM's account at U.S. Bank.

50. The Committee is informed and believes that neither ADOM, nor Archbishop Listecki can establish that the Cemetery Sale Proceeds were the funds transferred from ADOM's M&I Account to ADOM's account at U.S. Bank.

51. The Committee is informed and believes that as of March 2008, the balance of *unrestricted* funds in ADOM's account at U.S. Bank was approximately $55 million.

52. The Committee is informed and believes that in March 2008, ADOM directed U.S. Bank to liquidate the its account and transfer ADOM's *unrestricted* funds in excess of $55 million to the Cemetery Trust Account.

53. The Committee is informed and believes that ADOM's transfer of its *unrestricted* funds to the Cemetery Trust Account was the culmination of an asset protection scheme by which ADOM intended to place its previously *unrestricted* assets beyond the reach of the survivors of childhood sex abuse.

54. The Committee is informed and believes that ADOM formulated its asset protection scheme in response to the Sex Abuse Cases in both California and Wisconsin to avoid financial accountability to sex abuse survivors.

55. The Committee is informed and believes that after making the Initial $55 Million Transfer to the Cemetery Trust, ADOM continued, and still continues, making periodic transfers of funds which cannot be identified as Perpetual Care Funds or (or any other type of restricted or trust funds) from accounts ADOM owns to the Cemetery Trust Account (the "Subsequent Transfers").

56. The Committee is informed and believes that the funds used to make these Subsequent Transfers came from accounts in which ADOM commingled alleged Perpetual Care Funds with its operating funds and other non-trust funds and that the funds used to make the Subsequent Transfers cannot be traced or identified to Perpetual Care Funds or trust funds of any type.

57. Based upon a review of Great Plains, beginning in fiscal year 2008, when a customer purchased burial or other rights or services from a cemetery owned by ADOM, a portion of those Cemetery Sale Proceeds were deposited into an ADOM bank account at Park Bank (the "Park Bank Account"). This portion of the Cemetery Sale Proceeds were then transferred to the M&I Account. Upon information and belief, the Cemetery Sale Proceeds were commingled with ADOM's operating funds and other non-trust funds in both the Park Bank Account and the M&I Account.

58.     The Committee is informed and believes that at the present time, at least for fiscal year 2011, when a customer purchases burial or other rights or services from a cemetery owned by ADOM, those funds are deposited into one of several ADOM bank accounts owned by ADOM (which the Committee is informed and understands are referred to as the "burial account," the "mausoleum account," and the "split account").

59.     Also upon information and belief, the amounts of the Cemetery Sale Proceeds are then transferred into the Park Bank Account, where they are commingled with ADOM's operating funds and other non-trust funds.

60.     The Committee is informed and believes that prior to August 2010, ADOM contends it transferred the amount of the Cemetery Sale Proceeds from the Park Bank Account to its M&I Account. In or about August 2010, ADOM transferred all of the funds in the M&I Account to its new operating account at Johnson Bank (the "Johnson Bank Account") and closed the M&I account. Thereafter, upon information and belief, ADOM transferred and continues post petition to transfer the alleged amount of the Cemetery Sale Proceeds from the Park Bank Account to the Johnson Bank Account where these funds are again commingled with ADOM's operating funds and other non-trust funds.

61.     According to Great Plains, from June 2008 through December 2011 (the last date for which the Committee has information on Great Plains), ADOM transferred or disbursed more than $2.4 million in Subsequent Transfers from the M&I Account and the Johnson Bank Account to the following three entities: (1) Archdiocese of Milwaukee Income Care Fund ("ARCHDIOCESE OF MILW-INC CR FND"), (2) Archdiocese of Milwaukee

Catholic Cemetery Perpetual Care Trust ("ARCHDIOCESE OF MILWAUKEE CATHOLIC

CEMETERY PERPETUAL CARE TRUST") and (3) Archdiocese of Milwaukee Perpetual

Care Trust ("ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST"). According to

ADOM's monthly operating reports, from January to December 2011, ADOM transferred or

disbursed more than $298,000 in Subsequent Transfers from the Johnson Bank Account to the

Cemetery Trust. The following table identifies the dates and amounts of the Subsequent

Transfers that the Committee believes occurred at the present time:

| Date | Entity Name | Amount |
|---|---|---|
| 06/13/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | $1,300,000.00 |
| 06/20/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | 34,154.03 |
| 08/14/08 | ARCHDIOCESE OF MILWAUKEE CATHOLIC CEMETERY PERPETUAL CARE TRUST | 65,078.78 |
| 09/16/08 | ARCHDIOCESE OF MILW-INC CR FND | 352,330.00 |
| 02/24/09 | ARCHDIOCESE OF MILW-INC CR FND | 152,230.00 |
| 04/03/09 | ARCHDIOCESE OF MILW-INC CR FND | 42,205.00 |
| 05/01/09 | ARCHDIOCESE OF MILW-INC CR FND | 29,927.50 |
| 06/26/09 | ARCHDIOCESE OF MILW-INC CR FND | 48,745.00 |
| 08/14/09 | ARCHDIOCESE OF MILW-INC CR FND | 20,937.50 |
| 10/30/09 | ARCHDIOCESE OF MILW-INC CR FND | 77,187.50 |
| 11/24/09 | ARCHDIOCESE OF MILW-INC CR FND | 28,415.00 |
| 01/05/10 | ARCHDIOCESE OF MILW-INC CR FND | 24,430.00 |
| 01/22/10 | ARCHDIOCESE OF MILW-INC CR FND | 21,785.00 |
| 02/19/10 | ARCHDIOCESE OF MILW-INC CR FND | 16,225.00 |
| 03/19/10 | ARCHDIOCESE OF MILW-INC CR FND | 17,250.00 |
| 04/23/10 | ARCHDIOCESE OF MILW-INC CR FND | 27,372.50 |
| 05/28/10 | ARCHDIOCESE OF MILW-INC CR FND | 25,580.00 |
| 06/29/10 | ARCHDIOCESE OF MILW-INC CR FND | 23,275.00 |
| 07/30/10 | ARCHDIOCESE OF MILW-INC CR FND | 31,330.00 |
| 09/28/10 | ARCHDIOCESE OF MILW-INC CR FND | 34,062.50 |
| 10/15/10 | ARCHDIOCESE OF MILW-INC CR FND | 27,618.75 |

| Date | Entity Name | Amount |
|---|---|---|
| 11/23/10 | ARCHDIOCESE OF MILW-INC CR FND | 26,686.25 |
| 12/17/10 | ARCHDIOCESE OF MILW-INC CR FND | 16,750.00 |
| 02/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 31,687.50 |
| 03/18/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 13,750.00 |
| 04/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 32,150.00 |
| 05/13/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 23,800.00 |
| 06/14/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 30,562.50 |
| 07/15/12 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 17,987.50 |
| 08/16/12 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 14,837.50 |
| 09/16/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 29,185.00 |
| 10/14/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 37,487.50 |
| 11/15/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 32,612.50 |
| 12/13/11 | ARCHDIOCESE OF MILW-PERPETUAL CARE TRUST | 34,687.50 |

62.     The Committee is informed and believes that all of these Subsequent Transfers were deposited into the Cemetery Trust Account and that the three different entities listed on Great Plains are simply different names for the Cemetery Trust.

**E.     The ADOM Bankruptcy Case**

63.     On January 4, 2011 (the "Petition Date"), ADOM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"). ADOM continues to operate its business as a debtor in possession.

64.     ADOM's commencement of the above-captioned bankruptcy case as of the Petition Date created an "estate" as defined in 11 U.S.C. § 541(a).

**F.     The Cemetery Trust Litigation initiated by Archbishop Listecki**

65.     On June 28, 2011, the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust filed the original Complaint commencing this adversary proceeding (the

"Original Complaint") against the Committee as the sole defendant. The Original Complaint asserted two claims for relief: (1) a declaration of the Court that the assets in the Cemetery Trust are not property of ADOM's bankruptcy estate pursuant to section 541(a)(1) of the Bankruptcy Code; and (2) a declaration of the Court that the assets in the Cemetery Trust are specifically excluded as property of ADOM's estate under section 541(b)(1) of the Bankruptcy Code.

66.     The Original Complaint was based on the contention that 50% of each payment to ADOM made by purchasers of cemetery plots and $100 of each payment made to ADOM from purchasers of crypts "*were paid for perpetual caretaking services of the Cemetery Property, including preservation and maintenance of the Cemetery Property*" and that "*this portion is held in trust for the perpetual care of the Milwaukee Catholic Cemeteries*". Original Complaint at ¶ 18 (emphasis added).

67.     In its counterclaims to the Original Complaint, the Committee named Archbishop Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, as a counterdefendant. Pursuant to a stipulation that the Court approved, ADOM, although not a party to this adversary proceeding, agreed to be subject to discovery in this adversary proceeding.

68.     On December 20, 2011, the Committee delivered a letter to counsel for ADOM and Archbishop Listecki describing and identifying the well-settled authority that requires the parties seeking to recover alleged trust funds in a bankruptcy proceeding to trace the actual trust res (the "Tracing Requirements Letter"). The Tracing Requirements Letter

further described that where, as here, the alleged trust res is cash which has been commingled in the debtor's accounts with non-trust funds, the alleged trust funds can only be traced under the Lowest Intermediate Balance Test.

69.     Shortly after receiving the Tracing Requirements Letter, ADOM began to articulate Archbishop Listecki's new theory which is that ADOM created the trust res when it deposited its *unrestricted* funds into some unspecified and allegedly segregated account.

70.     On January 13, 2012, Archbishop Listecki, as trustee of the Cemetery Trust, filed the Amended Complaint (the "Amended Complaint") substituting himself as plaintiff in place of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust and seeking relief substantially similar to the relief sought in the original Complaint but based on a completely different theory and factual allegations.

71.     In the Amended Complaint, Archbishop Listecki, for the first time, advanced ADOM's new theory that ADOM created the trust res with its own funds rather than with the funds paid by the purchasers of burial and other cemetery rights and services from ADOM.

72.     The Committee is informed and believes that the new theory on the formation of the alleged trust res was formulated as a consequence of ADOM and Archbishop Listecki learning of their burden to trace all of the funds they alleged were held in trust upon the receipt of the Tracing Requirement Letter and based on the inability to met those requirements.

73. The Committee is informed and believes that ADOM has always commingled the payments it received from the purchasers of burial and other rights with its operating funds and other non-trust funds instead of segregating these payments as it was required to do if these payments were to be held in trust.

## FIRST COUNTERCLAIM
### (Turnover of Assets in Cemetery Trust under 11 U.S.C. § 542)

74. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

75. ADOM is the settlor of the Cemetery Trust.

76. ADOM contributed all assets in the Cemetery Trust.

77. The Cemetery Trust is a self-settled spendthrift trust.

78. ADOM is a beneficiary of the Cemetery Trust because, among other things, all payments from the Cemetery Trust, other than expenses of administration, are made either to ADOM or for its benefit and the purpose of the Cemetery Trust is to fulfill ADOM's corporate purpose, programs and administration, including satisfying its preexisting obligations to maintain its cemeteries and mausoleums.

79. The terms of the Cemetery Trust Agreement authorize Archbishop Listecki, as trustee, to make payments of income and principal to or for the benefit of ADOM at any time and in any manner in his discretion.

80. Under Wisconsin law, self-settled spendthrift trusts in which the settler is also a beneficiary of the trust are void against the interests of creditors.

81.     In particular, Wis. Stat. § 701.06(6) provides under these circumstances, upon application of a judgment creditor of the settlor, the court may order the trustee to satisfy the judgment out of the trust.

82.     Section 544 (a) of the Bankruptcy Code and the *Second Order Conferring Standing* give the Committee, on behalf of ADOM's estate, all of the rights and powers of a judgment creditor of ADOM, the settlor of the Cemetery Trust, including the judgment creditor referred to in Wis. Stat. § 701.06(6).

83.     The Cemetery Trust is self-settled, spendthrift trust in which ADOM as the settlor, is also a beneficiary.

84.     The Cemetery Trust is void and all of the assets in the Cemetery Trust constitute property of the estate under section 541(a) of the Bankruptcy Code.

85.     Archbishop Listecki, as trustee of the Cemetery Trust must turnover all of the assets in the Cemetery Trust to ADOM's estate under 11 U.S.C. § 542(a).

86.     Accordingly, the Committee prays for an order compelling Archbishop Listecki to turnover all of the assets in the Cemetery Trust to ADOM's estate.

## SECOND COUNTERCLAIM

**(Declaratory Relief: The Cemetery Trust is Void as to Judgment Creditors and the Funds and Assets in the Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. §§ 541(a)(1) and 544(a), and Wis. Stat. § 701.06(6) )**

87.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 and 75-84 above as if fully set forth here.

88.     In his Amended Complaint, the Archbishop Listecki alleges that

ADOM's estate has no rights in the funds and assets held in the Cemetery Trust.

89.     An actual and justiciable controversy exists as to whether the Cemetery

Trust is void and unenforceable under Wis. Stat. § 706.06(6).

90.     Accordingly, the Committee respectfully prays for a judgment

declaring that the Cemetery Trust is void and/or otherwise unenforceable and the funds and

assets in the Cemetery Trust constitute property of ADOM's estate.

## THIRD COUNTERCLAIM

**(Declaratory Relief: The Cemetery Trust is Void because ADOM, as Beneficiary,
Controls the Cemetery Trust and the Funds and Assets in the Cemetery Trust are
Property of ADOM's Estate under 11 U.S.C. § 541(a)(1))**

91.     The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1-73 above as if fully set forth here.

92.     Archbishop Listecki is the sole Corporate Member of ADOM, a

member of the Board of Directors and its President.

93.     Archbishop Listecki is the sole trustee of the Cemetery Trust.

94.     ADOM is the beneficiary of the Cemetery Trust.

95.     ADOM, through Archbishop Listecki controls the Cemetery Trust and

all distributions of principal and income from the Cemetery Trust.

96.     In his Amended Complaint, Archbishop Listecki alleges that ADOM's

estate has no rights in the funds and assets held in the Cemetery Trust.

97.     An actual and justiciable controversy exists as to whether the Cemetery

Trust is void and unenforceable as the result of ADOM's control of the Cemetery Trust.

98.     Accordingly, the Committee respectfully prays for a judgment declaring that the Cemetery Trust is void and/or otherwise unenforceable and the funds and assets in the Cemetery Trust constitute property of ADOM's estate under section 541(a) of the Bankruptcy Code.

## FOURTH COUNTERCLAIM
### (Declaratory Relief: The Cemetery Trust is Void Under the Doctrine of Merger and the Funds and Assets in the Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1))

99.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

100.     Under the doctrine of merger, a valid trust cannot exist and is void where the same entity holds the legal and beneficial interests in alleged trust assets. ADOM and the Cemetery Trust constitute a single entity because the Cemetery Trust is an alter ego of ADOM.

101.     The Cemetery Trust was created by and is for the benefit of ADOM.

102.     All assets in the Cemetery Trust, not used for administrative costs, are used to fund ADOM's corporate purpose, programs and administration, including its obligations to maintain its cemeteries and mausoleums.

103.     ADOM was the trustor/settler of the Cemetery Trust and through Archbishop Dolan, controlled every aspect of the creation and funding of the Cemetery Trust.

104.     Archbishop Dolan executed the Cemetery Trust Agreement on behalf of ADOM as the trustor/settlor and as the sole trustee of the Cemetery Trust.

105.   Archbishop Listecki, Archbishop Dolan's successor, continues to control the administration of the Cemetery Trust and the disposition of its assets: the Archbishop is the sole Corporate Member of ADOM, its President and a Director. Archbishop Listecki is also the sole trustee of the Cemetery Trust with sole discretion to distribute the income and principal of the Cemetery Trust to ADOM at any time.

106.   ADOM holds both the legal and beneficial interests in the assets of the Cemetery Trust and the Cemetery Trust.

107.   The Cemetery Trust has no separate existence of its own and is a mere instrumentality of ADOM.

108.   The Cemetery Trust was created as part of an asset protection scheme to divert and insulate ADOM's assets and make them unavailable to satisfy the claims of the Sex Abuse Plaintiffs, and other survivors of childhood sex abuse.

109.   The Cemetery Trust continues to be used to evade ADOM's obligations to fairly compensate the survivors of childhood sex abuse and other unsecured creditors, thereby resulting in an injustice.

110.   The Committee is informed and believes that the only funds in the Cemetery Trust or that have ever been deposited into the Cemetery Trust Account are "*unrestricted*" funds that ADOM transfers into the Cemetery Trust Account from accounts that ADOM owns (and that were or are commingled with ADOM's operating funds and non-trust funds).

111. ADOM's creation of the Cemetery Trust and the transfers of ADOM's *"unrestricted"* funds to the Cemetery Trust are proximate causes of harm to the survivors of sex abuse and ADOM's other creditors because ADOM's actions have severely diminished the value of the estate that would otherwise be available to pay the estate's creditors.

112. The creation and funding of the Cemetery Trust caused ADOM to be undercapitalized and insolvent.

113. In his Amended Complaint, Archbishop Listecki alleges that ADOM's estate has no rights in the funds and assets held in the Cemetery Trust.

114. An actual and justiciable controversy exists as to whether the legal and beneficial interest in the Cemetery Trust is held by the same legal entity such that the Cemetery Trust is void.

115. Accordingly, the Committee respectfully prays for a judgment declaring that the Cemetery Trust is void and/or otherwise unenforceable and the funds and assets in the Cemetery Trust constitute property of ADOM's estate under section 541(a) of the Bankruptcy Code.

## FIFTH COUNTERCLAIM

**(Declaratory Relief: Even if the Cemetery Trust is not Void, the Funds and Assets in the Cemetery Trust are Property of ADOM's Estate under 11 U.S.C. § 541(a)(1) Because all Funds Transferred to the Cemetery Trust had Previously been Commingled with Non-trust Funds and Cannot be Traced)**

116. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

117.	All of the funds that have been transferred to the Cemetery Trust by ADOM were previously commingled by ADOM with its operating funds and other non-trust funds in at least three ADOM bank accounts before those funds were transferred to the Cemetery Trust.

118.	Archbishop Listecki, as trustee of the Cemetery Trust, bears the burden of tracing which of those commingled funds of ADOM are alleged trust funds under the Lowest Intermediate Balance Test with respect to each of the accounts in which the alleged trust funds had been commingled with non-trust funds before they were transferred to the Cemetery Trust.

119.	All of the previously commingled funds in the Cemetery Trust that are not traced to identifiable trust funds under the Lowest Intermediate Balance Test as trust funds at the time they were transferred to the Cemetery Trust are property of ADOM's estate.

120.	An actual and justiciable controversy exists as to whether Archbishop Listecki can meet his burden to prove that all of the funds deposited into the Cemetery Trust Account, which were previously commingled with non-trust funds in ADOM's accounts, can be traced and identified as trust assets under the Lowest Intermediate Balance Test.

121.	Accordingly, the Committee respectfully prays for a judgment declaring that all funds in the Cemetery Trust that Archbishop Listecki cannot identify and trace under the lowest intermediate balance test are property of ADOM's estate under section 541(a) of the Bankruptcy Code.

## SIXTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Initial $55 Million Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(a) and 242.07)

122. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

123. The $55 Million Initial Transfer was made with an actual intent to hinder, delay, or defraud creditors of ADOM.

124. ADOM's creditors' claims arose either before or after the Initial $55 Million Transfer was made, including, but not limited to, the plaintiffs who filed the Sex Abuse Cases (the "Sex Abuse Plaintiffs") that were pending against ADOM in 2008 when ADOM made the Initial $55 Million Transfer to the Trust. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under 11 U.S.C. § 502.

125. At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to 11 U.S.C. § 544(b) and Wis. Stat. § 242.04(1)(a).

126. Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Initial $55 Million Transfer because, upon information and belief, that transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

127. The $55 Million Initial Transfer should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(a). ADOM's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

## SEVENTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Initial $55 Million Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(b) and 242.07)

128.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

129.    ADOM did not receive reasonably equivalent value in exchange for making the Initial $55 Million Transfer to the Cemetery Trust because the Cemetery Trust did not provide ADOM with any consideration whatsoever in return for that Initial $55 Million Transfer.

130.    At the time of the Initial $55 Million Transfer, ADOM (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the ADOM were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that ADOM would incur debts beyond its ability to pay as they became due. This is because ADOM's liabilities were greater than its assets due to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs at the time the Initial $55 Million Transfer was made by ADOM.

131.    ADOM's creditors' claims arose either before or after the Initial $55 Million Transfer was made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

132.     At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b).

133.     Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Initial $55 Million Transfer because, upon information and belief, that transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

134.     The $55 Million Initial Transfer should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b). ADOM's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

### EIGHTH COUNTERCLAIM
**(Avoidance and Recovery of Fraudulent Initial $55 Million Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.05(1) and 242.07)**

135.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

136.     ADOM did not receive reasonably equivalent value in exchange for making the Initial $55 Million Transfer to the Cemetery Trust because the Cemetery Trust did not provide ADOM with any consideration whatsoever in return for the Initial $55 Million Transfer.

137.     ADOM (a) was insolvent at the time it made the Initial $55 Million Transfer; or (b) became insolvent as a result of the Initial $55 Million Transfer. ADOM was insolvent because its liabilities were greater than its assets at the time of the Initial

$55 Million Transfer. This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

138.    At least one claim of a creditor of ADOM arose before the Initial $55 Million Transfer was made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

139.    At all relevant times, the $55 Million Initial Transfer made within four years prior to the Petition Date was and is avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.05(1).

140.    Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Initial $55 Million Transfer because, upon information and belief, that transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

141.    The $55 Million Initial Transfer should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.05(1). ADOM's estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

## NINTH COUNTERCLAIM
### (Avoidance and Recovery of Fraudulent Initial $55 Million Transfer Pursuant to 11 U.S.C. §§ 548(e)(1) and 550)

142.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

143.    ADOM is the settlor of the Cemetery Trust.

144. The Cemetery Trust is a self-settled trust.

145. ADOM is a beneficiary of the Cemetery Trust because, among other things, all payments from the Cemetery Trust, other than expenses of administration, are made either to ADOM or for its benefit and the purpose of the Cemetery Trust is to fulfill ADOM's corporate purpose, programs and administration, including satisfying its preexisting obligations to maintain its cemeteries and mausoleums.

146. The terms of the Cemetery Trust Agreement authorize Archbishop Listecki, as trustee, to make payments of income and principal to or for the benefit of ADOM at any time and in any manner in his discretion.

147. In March 2008, ADOM made the Initial $55 Million Transfer to the Cemetery Trust. Therefore the Initial $55 Million Transfer was made within ten (10) years of the Petition Date.

148. ADOM made the Initial $55 Million Transfer to the Cemetery Trust with actual intent to hinder, delay, or defraud its creditors, including, but not limited to, sex abuse survivors who had (and still have) claims against ADOM for sexual abuse at the time of the Initial $55 Million Transfer. Among other things, complaints were pending in Wisconsin State Court at the time the Initial $55 Million Transfer was made and hundreds of other survivors of sex abuse had claims which had not yet been filed.

149. Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Initial $55 Million Transfer because, upon information and belief, that transfer flowed directly from ADOM's U.S. Bank account into the Cemetery Trust Account.

150.     Accordingly, the Initial $55 Million Transfer is avoidable, and should be avoided, as fraudulent pursuant to sections 548(e)(1) and 550 of the Bankruptcy Code. ADOM's estate is entitled to recover the Initial $55 Million Transfer or the value of the Initial $55 Million Transfer pursuant to section 550 of the Bankruptcy Code.

## TENTH COUNTERCLAIM
### (Avoidance and Recovery of Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 548(e)(1) and 550)

151.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

152.     ADOM is the settlor of the Cemetery Trust.

153.     The Cemetery Trust is a self-settled trust.

154.     ADOM is a beneficiary of the Cemetery Trust because, among other things, all payments from the Cemetery Trust, other than expenses of administration are made either to ADOM or for its benefit and the purpose of the Cemetery Trust is to fulfill ADOM's corporate purpose, programs and administration, including, satisfying its preexisting obligations to maintain its cemeteries and mausoleums.

155.     The Subsequent Transfers were made within ten (10) years of the Petition Date.

156.     ADOM made the Subsequent Transfers to the Cemetery Trust with actual intent to hinder, delay, or defraud its creditors, including, but not limited to, sex abuse survivors who had (and still have) claims against ADOM for sexual abuse at the time of the Subsequent Transfers. Among other things, complaints were pending in Wisconsin State

Court at the time the Subsequent Transfers were made and hundreds of other survivors of sex abuse had claims which had not yet been filed.

157. Archbishop Listecki, as trustee of the Cemetery Trust, was the initial transferee of the Subsequent Transfers.

Accordingly, the Subsequent Transfers are avoidable, and should be avoided, as fraudulent pursuant to sections 548(e)(1) and 550 of the Bankruptcy Code. ADOM's estate is entitled to recover the Subsequent Transfers or the value of the Subsequent Transfers pursuant to section 550 of the Bankruptcy Code.

### ELEVENTH COUNTERCLAIM
**(Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)**

158. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

159. The Committee is informed and believes that for at least the two years prior to the Petition Date (and even prior to that), ADOM made Subsequent Transfers to the Cemetery Trust Account.

160. ADOM made the Subsequent Transfers with the intent to hinder, delay, or defraud ADOM's creditors, including, but not limited to, the Sex Abuse Plaintiffs and other sex abuse survivors who had (and still have) claims against ADOM for sexual abuse.

161. The Subsequent Transfers made within the two years prior to the Petition Date were and are avoidable pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

162. Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

163. ADOM's estate is entitled to recover the Subsequent Transfers made within the two years prior to the Petition Date, or the value thereof, pursuant to section 550 of the Bankruptcy Code.

## TWELFTH COUNTERCLAIM
### (Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550, and Wis. Stat. §§ 242.04(1)(a) and 242.07)

164. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

165. The Subsequent Transfers made in the four years prior to the Petition Date were made with an actual intent to hinder, delay, or defraud any creditor of the Debtor.

166. ADOM creditors' claims arose either before or after the Subsequent Transfers, and each of them, were made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

167. The Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(a).

168. Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

169. The Subsequent Transfers made within four years prior to the Petition Date should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(a). ADOM's estate is entitled to recover the Subsequent Transfers made within four years prior to the Petition Date, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

## THIRTEENTH COUNTERCLAIM
### (Avoidance and Recovery of Fraudulent Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)

170. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

171. ADOM did not receive reasonably equivalent value in exchange for the Subsequent Transfers to the Cemetery Trust made in the two years prior to the Petition Date because the Cemetery Trust did not provide ADOM with any consideration whatsoever in return for the Subsequent Transfers.

172. ADOM: (a) was insolvent, or became insolvent as a result of the Subsequent Transfers made in the two years prior to the Petition Date; (b) was engaged in or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

173. ADOM was insolvent because its liabilities were greater than its assets. This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

174. At all relevant times, the Subsequent Transfers made within two years prior to the Petition Date were and are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

175. Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

176. The Subsequent Transfers made within two years prior to the Petition Date should be avoided as fraudulent pursuant to section 548(a)(1)(B) of the Bankruptcy Code. The Debtor's estate is entitled to recover the Subsequent Transfers made within the two years prior to the Petition Date, or the value thereof, pursuant to section 550 of the Bankruptcy Code.

### FOURTEENTH COUNTERCLAIM

**(Avoidance and Recovery of Fraudulent Subsequent Transfers
Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550,
and Wis. Stat. §§ 242.04(1)(b) and 242.07)**

177. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

178. ADOM did not receive reasonably equivalent value in exchange for the Subsequent Transfers to the Cemetery Trust made within the four years prior to the Petition Date because the Cemetery Trust did not provide ADOM with any consideration whatsoever in return for those Subsequent Transfers.

179.     ADOM Debtor (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of ADOM were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that ADOM would incur debts beyond its ability to pay as they became due. This is because the Debtor's liabilities were greater than its assets due to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

180.     Some of the claims of ADOM's creditors arose either before or after the Subsequent Transfers, and each of them, were made, including, but not limited to the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

181.     At all relevant times, the Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b).

182.     Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

183.     The Subsequent Transfers made in the four years prior to the Petition Date should be avoided as fraudulent pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.04(1)(b). ADOM's estate is entitled to recover the Subsequent Transfers, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

## FIFTEENTH COUNTERCLAIM

### (Avoidance and Recovery of Fraudulent Subsequent Transfers
### Prior to the Petition Date Pursuant to 11 U.S.C. §§ 544(b) and 550,
### and Wis. Stat. §§ 242.05(1) and 242.07)

184. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

185. ADOM did not receive reasonably equivalent value in exchange for making the Subsequent Transfers to the Cemetery Trust in the four years prior to the Petition Date because the Cemetery Trust did not provide ADOM with any consideration whatsoever in return for those Subsequent Transfers.

186. ADOM (a) was insolvent at the time it made the Subsequent Transfers, and each of them; or (b) became insolvent as a result of the Subsequent Transfers. ADOM was insolvent because its liabilities were greater than its assets. This insolvency was due, at least in part, to the claims of sex abuse survivors including, but not limited to, the Sex Abuse Plaintiffs.

187. At least one creditor's claim arose before the Subsequent Transfers, and each of them, were made, including, but not limited to, the Sex Abuse Plaintiffs. The Sex Abuse Plaintiffs hold unsecured claims that are allowable under section 502 of the Bankruptcy Code.

188. At all relevant times, Subsequent Transfers made within four years prior to the Petition Date were and are avoidable pursuant to section 544(b) of the Bankruptcy Code and Wis. Stat. § 242.05(1).

189.    Archbishop Listecki, as trustee of the Cemetery Trust, was the initial transferee of the Subsequent Transfers.

190.    The Subsequent Transfers made within four years prior to the Petition Date should be avoided as fraudulent pursuant to subject to 544(b) of the Bankruptcy Code and Wis. Stat. § 242.05(1). ADOM's estate is entitled to recover the Subsequent Transfers made within four years prior to the Petition Date, or the value thereof, pursuant to section 550 of the Bankruptcy Code and Wis. Stat. § 242.07.

## SIXTEENTH COUNTERCLAIM
### (Avoidance and Recovery of Preferential Subsequent Transfers Prior to the Petition Date Pursuant to 11 U.S.C. §§ 547 and 550)

191.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

192.    The Subsequent Transfers that ADOM made to the Cemetery Trust in the one year prior to the Petition Date were made to the Cemetery Trust as a an alleged creditor of ADOM on account of an debt ADOM contends it owed to the Cemetery Trust which debt existed before the Subsequent Transfers were made. The Committee is informed and believes that the Cemetery Trust contends it had a claim against ADOM for the amount of the Subsequent Transfers beginning in or about 2008 and continuing until the present.

193.    Section 101(31) of the Bankruptcy Code defines an "insider" of a corporation to include a director, officer, or person in control of the debtor, among other things. Archbishop Listecki, the sole Corporate Member and President of ADOM and the

person in control of ADOM, is also the sole trustee of the Cemetery Trust and controls the Cemetery Trust.

194. The Subsequent Transfers were made while the ADOM was insolvent.

195. The Subsequent Transfers to the Cemetery Trust enabled the Cemetery Trust to receive more than it would have received if: (i) ADOM's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (ii) the Subsequent Transfers had not been made; and (iii) the Cemetery Trust received payment on the debt to the extent provided by the Bankruptcy Code.

196. Archbishop Listecki, as trustee of the Cemetery Trust was the initial transferee of the Subsequent Transfers.

197. Accordingly, the Subsequent Transfers made in the 90 days before the Petition Date, in the amount of not less than $71,055.00 (the "90-Day Preferential Transfers") are avoidable, and should be avoided, as preferential transfers pursuant to sections 547 and 550 of the Bankruptcy Code. ADOM's estate is entitled to recover the value of the 90-Day Preferential Transfers, in an amount of not less than $71,055.00, made during the 90 days before the Petition Date.

198. In addition, the Subsequent Transfers made in the one year before the Petition Date, in the amount of not less than $292,365.00 (the "One-Year Preferential Transfers") are avoidable, and should be avoided, as preferential transfers pursuant to sections 547 and 550 of the Bankruptcy Code. ADOM's estate is entitled to recover the value of the

One-Year Preferential Transfers, in an amount of not less than $292,365.00, made during the one year before the Petition Date.

## SEVENTEENTH COUNTERCLAIM
### (Avoidance and Recovery of Post Petition Transfers Pursuant to 11 U.S.C. §§ 549 and 550)

199.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1-73 above as if fully set forth here.

200.    The Subsequent Transfers that ADOM made to the Trust after the Petition Date are unauthorized post petition transfers not made in the ordinary course of ADOM's business.

201.    Accordingly, the Subsequent Transfers that the Debtor made after the Petition Date are avoidable, and should be avoided, as unauthorized post petition transfers pursuant to sections 549 and 550 of the Bankruptcy Code. ADOM's estate is entitled to recover the value of the Subsequent Transfers made after the Petition Date.

WHEREFORE, the Committee prays for judgment as follows:

1.    For turnover of the funds and assets in the Cemetery Trust to the ADOM chapter 11 estate.

2.    Declaring that the Cemetery Trust is void and unenforceable and the assets in the Cemetery Trust constitute property of ADOM's estate;

3.    Declaring that the Cemetery is void and unenforceable and the assets in the Cemetery Trust constitute property of ADOM's estate under the doctrine of merger

because ADOM holds both the legal and beneficial interests in the Cemetery Trust and its assets;

4.      Declaring that the Cemetery Trust has no claims against the estate;

5.      Declaring that even if the Cemetery Trust is valid, Archbishop Listecki, as trustee of the Cemetery Trust has not met his burden to trace the funds ADOM transferred to the Cemetery Trust Account that had been previously commingled with other non-trust funds prior to being transferred to the Cemetery Trust Account, and therefore all of the funds in the Cemetery Trust Account that cannot be traced under the Lowest Intermediate Balance Test constitute property of ADOM's bankruptcy estate under 11 U.S.C. § 541(a)(1);

6.      That the Initial $55 Million Transfer, the Subsequent Transfers, the 90-Day Preferential Transfers, and the One-Year Preferential Transfers are avoidable as fraudulent and/or preferential transfers pursuant to 11 U.S.C. §§ 544, 547, and/or 548, and Wis. Stat. §§ 242.04 and 242.05;

7.      That the ADOM's bankruptcy estate is entitled to recover the Initial $55 Million Transfer, or the value thereof, in an amount to be determined, but not less than $55 million, pursuant to 11 U.S.C. § 550 and Wis. Stat. § 242.07;

8.      That ADOM's bankruptcy estate is entitled to recover the Subsequent Transfers, or the value thereof, in an amount to be determined, pursuant to 11 U.S.C. § 550 and Wis. Stat. § 242.07;

9.      That ADOM's bankruptcy estate is entitled to recover the 90-Day Preferential Transfers, and the One-Year Preferential Transfers, or the value thereof, in an

amount to be determined, but believed not to be less than $71,055.00 with regard to the 90-Day Preferential Transfers and not less than $292,365.00 with regard to the One-Year Preferential Transfer, pursuant to 11 U.S.C. § 550;

       10.    That ADOM's bankruptcy estate is entitled to recover the post petition transfers, or the value thereof, pursuant to 11 U.S.C. §§ 549 and 550, in an amount to be determined, but believed not to be less than $298,000.00.

[remainder of page left intentionally blank]

11.    For prejudgment interest; and

12.    For such other and further relief as the Court may deem just and proper.

Dated:    April 11, 2012                      Respectfully submitted,

                                              PACHULSKI STANG ZIEHL & JONES LLP

                                       By     */s/ Kenneth H. Brown*
                                              James I. Stang (CA Bar No. 94435)
                                              Kenneth H. Brown (CA Bar No. 100396)
                                              Gillian N. Brown (CA Bar No. 205132)
                                              Pachulski Stang Ziehl & Jones LLP
                                              10100 Santa Monica Blvd., 13th Floor
                                              Los Angeles, CA 90067
                                              Telephone: (310) 277-6910
                                              Facsimile: (310) 201-0760
                                              E-mail: jstang@pszjlaw.com
                                                      kbrown@pszjlaw.com
                                                      gbrown@pszjlaw.com

                                              -and-

                                              Albert Solochek (State Bar No. 1011075)
                                              Jason R. Pilmaier (State Bar No. 1070638)
                                              Howard, Solochek & Weber, S.C.
                                              324 E. Wisconsin Ave., Suite 1100
                                              Milwaukee, WI 53202
                                              Telephone: (414) 272-0760
                                              Facsimile: (414) 272-7265
                                              E-mail: asolochek@hswmke.com
                                                      jpilmaier@hswmke.com

                                              Attorneys for the Official Committee of
                                              Unsecured Creditors